# CHARLES E. GRANT

*v.*

# JOHN I. BENNETT *et al.*

*Filed at Ottawa September 25, 1880.*

1. NOTICE—*by lis pendens—when it begins.* *Lis pendens* does not exist, in respect of a suit in chancery, until a summons or subpœna has been duly and regularly served upon the defendants in the bill, and the service alone is not sufficient, but a bill must also be filed, and when a bill has been filed and process served, whether the bill was filed before or after service, at common law, *lis pendens* begins from the date of the service. Our statute, requiring suits in chancery to be commenced by filing a bill, has not changed the rule.

2. UNRECORDED DEED—*effect of prior decree.* A final decree rendered, either in the circuit court, or in this court, divesting a party of the title to real estate, before the recording of a conveyance of the property from such party, will defeat the title of the grantee. But a judgment of this court reversing a decree of the circuit court and remanding the cause, is not such a final judgment or decree, although the decision settles the rights of the parties.

3. FRAUD—*of grantor alone, not sufficient.* Although the object of a grantor in conveying real estate was to deprive his vendor from obtaining a reconveyance for fraud or other cause, this will not defeat the title of the grantee, if he purchased in good faith without notice of the equities of the original owner from whom his grantor derived the title. Nor will the conduct of his grantor in defending a suit brought against him subsequent to his conveyance, by *his* grantor, in his own name, without disclosing the fact that he had sold to his grantee, so long as the latter had no knowledge of the impending litigation.

4. The fact that a purchaser of real estate delays putting his quitclaim deed upon record for some time, and afterwards procures a warranty deed to be made and antedated to the time of his purchase, does not afford any evidence of fraudulent intent on his part, where it was the agreement at the time the quitclaim deed was made that his grantor should make him a warranty deed when desired by him.

5. CONVEYANCE—*quitclaim sufficient to pass the title.* A quitclaim deed is as effectual to pass the title of the grantor as a warranty deed.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

33—96 ILL.

This was a bill in chancery by Abraham J. Rockafellow, against Charles E. Grant and Mary A. Newcomb and one Saunders, to set aside a certain deed given by Miss Newcomb to Grant, and a deed from Grant to Saunders, as a cloud upon the title of the complainant in certain lands.

On September 21, 1868, Rockafellow conveyed to Miss Newcomb the premises in question. Rockafellow resided in Galva, Illinois, and Miss Newcomb in Galesburg.

In January, 1869, Miss Newcomb made a parol contract with Grant to sell him the premises for $2000, and received from him $300 of the purchase money, the balance to be paid when she made a conveyance.

On March 4, 1869, about 12 o'clock M., Rockafellow filed in the circuit court of Cook county, a bill against Miss Newcomb, charging, in substance, that she held the premises in trust, and in breach of the trust, refused to reconvey.

The same day, March 4, 1869, between 1 and 2 o'clock P. M., Miss Newcomb, having executed and acknowledged her deed, delivered it to Grant, and received the balance of the purchase money, $1700.

At the time of delivery, attention was called to the fact that the deed was a quitclaim, and Miss Newcomb agreed to make a warranty deed, whenever called upon to do so.

Neither party, at this time, knew anything about the filing of the bill in Chicago.

On March 7, 1869, the summons in the suit of Rockafellow was served upon Miss Newcomb. In the spring of 1870, she made a warranty deed for the same premises to Grant, dated of the same date as the quitclaim deed.

On July 14, 1870, the suit was heard on the pleadings and proofs, and the bill dismissed. On appeal the decree was reversed and the cause remanded, (57 Ill. 187). The opinion of the Supreme Court was filed in the circuit court on January 25, 1871.

On March 16, 1871, the warranty deed from Miss Newcomb to Grant was filed for record, and on March 18, 1871, a

decree was entered in the suit of Rockafellow against Miss Newcomb, ordering a reconveyance of the property, and a master's deed was made to Rockafellow on April 25, 1871, and on May 9, 1871, this bill was filed by Rockafellow against Grant and Newcomb, which states that Newcomb conveyed to Grant *lis pendens,* and asks to have the deed set aside as a cloud.

Bennett, Sleeper and Whiton purchased from Rockafellow after this suit was brought, and have been joined as complainants. The deed to Bennett is dated May 30, 1872. Reamer A. Saunders, who held a deed from Grant, and Henry F. Vallette were also made parties defendant by supplemental bill.

Mr. J. H. KNOWLTON, for the appellant:

The law is, that if the contract of purchase be, in fact, made *before* the suit is commenced, and even *before* the *service* of process on the defendant, the purchaser is not brought within the law of *lis pendens,* even though he makes payment and receives his deed of conveyance while the suit is actually *lis pendens;* and if the purchaser is then in possession of the land he should be made a party to the suit. Freeman on Judgments, (2d ed.) secs. 195 and 201; *Hall* v. *Nelson,* 23 Barb. N. Y. 88; *Curtis* v. *Hitchcock,* 9 Paige, 399; *Hopkins* v. *McLaren,* 4 Cow. 677; *Chapman* v. *West,* 17 N. Y. 125; *The People* v. *Connelly,* 8 Abb. Pr. Rep. 128; *Ensworth* v. *Lambert,* 4 Johns. Ch. 606; *Hongwout* v. *Murphy,* 22 N. J. Eq. 545; *Hunt* v. *Haven,* 52 N. H.; *Stuyvesant* v. *Hall,* 2 Barb. Ch. 151; *Clarkson* v. *Morgan,* 6 B. Monroe, Ky. 441; *Gibbs* v. *Trimble,* 14 Ohio, 323; *Parks* v. *Wendal,* 11 Wend. 442; *Allen* v. *Mandeville,* 26 Miss. 397; *Butler* v. *Tomlinson,* 38 Barb. 641; *Edwards* v. *Bonk'smith,* 38 Ga. 213; *Hemmington* v. *Hemmington,* 27 Mo. 560; *Lyle* v. *Bradford,* 7 Mon. 115; *Powell* v. *Wright,* 7 Beavan, 444.

It is also necessary at common law that the bill be filed, but upon such filing the *lis pendens* begins, it is said, from the service of the subpoena. *Anon.* 1 Vern. 318; Sugden on

Vendors, 1045. For a complete view, see also *Kellogg* v. *Fancher*, 23 Wis. 21; *Leitch* v. *Wells*, 48 N. Y. 611; *Hayden* v. *Backlin*, 9 Paige, (N. Y. Ch.) 513; Cross on Liens, 140; 7 Blackford, Ind. 242; 22 Alabama, 743; 4 Sneed, Tenn. 672; 27 Mo. 560.

Where the service may be made by publication, the *lis pendens* begins *only* when the publication is complete. *Wickliffe* v. *Breckenridge*, 1 Bush, 237; *Miller* v. *Sherry*, 2 Wallace, 237; *Warring* v. *Warring*, 7 Abb. Pr. 472; *Goodwin* v. *McGohee*, 15 Ala. 232; *Chandron* v. *Magee*, 5 id. 570; *Bennett's Lessee* v. *Williams*, 5 Ohio, 491; *Chevinger* v. *Hill*, 4 Bibb. 498; *Carter* v. *Miller*, 30 Mo. 432; Freeman on Judgments, sec. 195.

To declare what shall be the commencement of a suit, or how it shall be commenced, is very far from a declaration of when a suit shall begin to be *lis pendens*. *Allen* v. *Mandeville*, 26 Miss. 397; *Butler* v. *Tomlinson*, 38 Barb. 641; *Hongwout* v. *Murphy*, 22 N. J. Eq. 545, and other cases above cited.

Messrs. Lawrence, Campbell & Lawrence, also for the appellant:

If the quitclaim deed was surrendered as alleged, the title did not revert, but a reconveyance or a decree of cancellation was necessary. *Duncan* v. *Wickliffe*, 4 Scam. 452; *Washington* v. *Ogden*, 1 Black, 450; *Fawcetts* v. *Kimmey*, 33 Ala. 261; *Gimon* v. *Davis*, 36 id. 589; *Kelly* v. *Wilson*, 33 Cal. 690; *Scharffer* v. *Fithian*, 17 Ind. 463; *Jorden* v. *Pollock*, 14 Ga. 145; *Listoff* v. *Hart*, 25 Miss. 245; *Tibeau* v. *Tibeau*, 19 id. 78; *Wilson* v. *Hill*, 13 N. J. Eq. 143; *Raynor* v. *Wilson*, 6 Hill, 469; *Schiet* v. *Harge*, 6 Barb. 373; *Connelly* v. *Doe*, 8 Blackf. 320; *Carver* v. *McNulty*, 39 Pa. St. 473; *Morgan* v. *Ealm*, 4 Yerg. (Tenn.) 375; *Grayson* v. *Richards*, 10 Leigh, 57; *Parker* v. *Kane*, 4 Wis. 1; *Johnson* v. *Jones*, 1 Black, 209.

Re-delivery by grantee to grantor made after delivery of deed to himself, does not retransfer the title. *Kearsing* v.

*Killian*, 18 Cal. 491; *Lawton* v. *Gordon*, 34 id. 36; *Kimball* v. *Greig*, 47 Ala. 230.

Voluntary destruction of a deed by one of the grantees can not divest the title. *Speer* v. *Speer*, 7 Ind. 178; *Steel* v. *Steel*, 4 Allen, 417; *Rifener* v. *Bowman*, 53 Pa. St. 313.

The statute protecting subsequent purchasers and mortgagees against unrecorded deeds does not relate to subsequent judgment, but the purchaser under such judgment is entitled to the protection of the statute from the day of sale. *Orth* v. *Jennings*, 8 Blackf. 420; *Runyan* v. *McClellan*, 24 Ind. 165.

But Rockafellow was not a purchaser at all. He was the holder of a latent equity founded on a trust.

This is fully established by the opinion in *Rockafellow* v. *Newcomb*, 57 Ill. 187.

A *bona fide* purchaser of a legal title is not affected by any latent equity, founded on a *trust, fraud,* or otherwise, of which he had no notice, actual or constructive. *Scott* v. *Burton*, 2 Ashm. (Pa.) 312; *Love* v. *Braxton*, 5 Call, (Va.) 537; *Cressy* v. *Phelps*, 2 Root (Conn.) 420; *Wainburzee* v. *Kennedy*, 4 Desau. (S. C.) 274; *Lewis* v. *Taylor*, Riley (S. C. Ch.) 179; *Moore* v. *Clay*, 7 Ala. 742; *Owings* v. *Jovitt*, 2 A. K. Marsh. 380; *Moore* v. *Dodd*, 1 id. 140; *Bradford* v. *Trustees*, id. 175; *Lemmon* v. *Brown*, 4 Bibb, (Ky.) 308; *Moore* v. *Hunter*, 1 Gilmer, 317; *Willis* v. *Henderson*, 4 Scam. 13; *Prevo* v. *Walters*, id. 35; *Hall* v. *Swarthout*, 29 Mich. 249; *McNab* v. *Young*, 81 Ill. 11.

Grant was certainly not bound by the decree in the case of *Rockafellow* v. *Newcomb*, for he was not a party to the suit, and the decree only binds parties and privies (*i. e.*) those who purchase *lis pendens*.

In this case, Grant stands precisely as he would have stood in the first suit if Rockafellow had, upon notice of his purchase, made him a party to it.

It is next claimed by appellees that the quitclaim deed from Miss Newcomb to Grant did not pass the title, but only such interest as she actually had.

But this proposition is not sustained by authority. In this State it has been uniformly held that a quitclaim deed is effectual to pass the apparent title of record, unless there are affirmative words in the deed showing a contrary intent. *Morgan* v. *Clayton*, 61 Ill. 40; *Butterfield* v. *Smith*, 11 id. 485; *Hamilton* v. *Doolittle*, 37 id. 343.

Mr. JOHN I. BENNETT, for the appellees:

It is an admitted fact that the bill was filed before the quitclaim deed to Grant was executed. It follows that he took subject to the pending case.

On the question of *lis pendens*, see 1 Hoff. Ch. Prac. 101, 1 Newland's Prac. 61, *Newman* v. *Chapman*, 2 Randolph, 102, 23 Wis. 23, *Piggott* v. *Nower*, 3 Sev. 536, 3 Vern. 318, 1 Mad. Ch. 5, *Drew* v. *Norbury*, 3 Jones & L. Judg. Dec. 281, and *Kellogg* v. *Fancher*, 23 Wis. 28.

But the filing of the bill, in this State, is fixed by statute as the commencement of the suit. Rev. Stat. 1874, chap. 22, p. 198, sec. 4.

If the writ issues before the bill is filed it is invalid. *Hodgen et al.* v. *Guttery*, 58 Ill. 435.

It follows, as the filing of the bill, and not the service of a subpœna issued before bill filed, is made by statute the commencement of the suit, that from that time notice of *lis pendens* attaches. *Scarlett et al.* v. *Gorham et al.* 28 Ill. 321; *Taylor* v. *Hopkins*, 40 id. 447; *Dickenson* v. *Todd*, 43 id. 507; *County of Jackson* v. *Hall*, 53 id. 440; *Hodgen et al.* v. *Guttery*, 58 id. 435.

The courts of other States, even in the absence of a statute like ours, have held, on equitable principles, that the contents of a bill after filing become notice to the world of its scope and pendency. *Ferries* v. *Bryick*, 6 Clarke, 260; *Bois* v. *Bois*, 1 Cald. (Tenn.) 284; *Scudder* v. *VanAmberg*, 4 Edw. C. R. 29; *Griffith* v. *Griffith*, 1 Hoff. C. R. 153; *Lewis* v. *Mews*, 1 Stabb. (S. C. Eq.) 183; *Woodfolk* v. *Blunt* 3 Hey. (Tenn.)

147; *Griffith* v. *Griffith,* 9 Paige, 317; *Kellogg et al.* v. *Fancher et al.* 23 Wis. 29 ; *Jackson* v. *Richards,* 6 Cow. 619.

A deed of quitclaim and release only passes the title which the grantor has at the time of conveyance, and does not cut off the rights of third parties accrued under a prior conveyance, or a *trust estate,* as in favor of a prior grantee, or *cestui que trust.* In the case of a trust estate, the legal title would pass, but would pass subject to the rights of the *cestui que trust. Hamilton* v. *Doolittle,* 37 Ill. 482 ; *Snyder* v. *Laframboise,* Breese, 347; *Brown* v. *Jackson,* 3 Wheat. 452 ; *McConnel* v. *Reed,* 4 Scam. 121 ; *Butterfield* v. *Smith,* 11 Ill. 485 ; *Doyle et al.* v. *Knapp,* 38 Cam. 338 ; *Spinner* v. *Darst,* 14 Ill. 306 ; *Villa* v. *Rodriguez,* 12 Wall. 339 ; *May* v. *LeClaire,* 11 id. 232 ; *Oliver* v. *Riatt,* 3 How. 495.

Messrs. SLEEPER & WHITON, *pro se:*

The amended answer of Grant states that he accepted the quitclaim deed upon a promise of Newcomb, that if at any future time he should want a warranty, she would furnish it. Of course, then, Grant's claim on the score of a *bona fide* purchaser before suit brought, must rest upon the conveyance *accepted* before the suit of Rockafellow was instituted. This deed does not purport to be a release and quitclaim *of the land,* but only a release and quitclaim *of the right, title and interest* of Newcomb in the land. It has often been decided that a mere release of *right, title and interest* does not purport to be an actual sale of the fee simple, but only of what remaining interest there may be in the grantor, subject to prior equities. *Frink* v. *Darst,* 14 Ill. 304; *Bennett* v. *Waller,* 23 id. 184; *Hamilton* v. *Doolittle,* 37 id. 473; *Lull* v. *Stone,* id. 224; *May* v. *LeClaire,* 11 Wall. 232 ; *Villa* v. *Rodriguez,* 12 id. 338.

It may be said that while *purchasers* would be protected from an application of the doctrine of relation, in the case of verbal contracts when no possession is taken by the vendee, yet that Rockafellow was not a purchaser and can not defend against its application.

Rockafellow, having obtained a full equitable title to his land by such decision, was, in every point of view, as much entitled to protection from the doctrine of *relation* as any purchaser. He was an equitable purchaser, the consideration being the facts which entitled him to the decree, and the decree amounted in equity to a conveyance, and that conveyance was on record in this court, in its opinion and final order, settling all questions about the title.

The decision of this court in the case of *Rockafellow* v. *Newcomb,* made January 25, 1871, was a substantial settlement of the rights of the parties in that suit, and a finding that Rockafellow was entitled to a conveyance, and, as such, binding on all persons purchasing from Newcomb. There was no judicial discretion to be exercised anywhere. The order of this court was constructive notice to all the world that Rockafellow was the complete equitable owner of this land.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill brought by John I. Bennett and others, appellees, in the circuit court of Cook county, against Charles E. Grant and others, to set aside, as a cloud upon their title, a certain deed purporting to have been executed on the 4th day of March, 1869, by Mary A. Newcomb to Charles E. Grant, for certain property in Hyde Park, Cook county.

The cause came to a hearing upon the pleadings and evidence, and the court rendered a decree in favor of the complainants in the bill, to reverse which this appeal has been brought.

The property originally belonged to Abraham J. Rockafellow, who, in 1868, conveyed it to Mary J. Newcomb, but on the 4th day of March, 1869, he filed his bill against her in the circuit court of Cook county to compel a reconveyance. The bill was filed about noon of the 4th. Summons was issued and served on the following day. The deed from Newcomb to Grant was delivered one or two hours subsequent to the filing of the bill.

The bill filed by Rockafellow was, upon the hearing, dismissed, and he appealed, the appeal resulting in a decision reversing the decree, with directions to the circuit court to enter a decree in favor of the complainant. On the 18th day of June, 1871, a final decree was rendered in the circuit court. Prior to this, however, and on the 16th day of March, 1871, the deed to Grant was placed upon record. After the rendition of the decree on the 18th day of June, appellees purchased of Rockafellow, and, claiming title under him, file this bill.

Three questions arise upon the record : First, whether the filing of the bill by Rockafellow against Newcomb can be regarded as *lis pendens* before the service of subpœna. Second, was Grant chargeable with constructive notice of the decision rendered in this court in the case on appeal? Third, was the purchase of the premises by Grant made in good faith for a valuable consideration?

It is clear from the evidence that Grant received a deed of the premises from one to two hours after the bill was filed. If, therefore, the filing of the bill can be held to be *lis pendens*, without the service of subpœna, it follows that the conveyance to him would be held subject to the final result of the bill.

We have examined the authorities bearing upon the question with that degree of care that the importance of the subject demands, and we are satisfied that in the courts of chancery in England, and in the States where the common law prevails, *lis pendens* does not exist until a summons or subpœna has been duly and regularly served upon the defendants in the bill, except where the common law rule has been changed by statute.

The service of subpœna alone is not sufficient, but a bill must also be filed, and where a bill has been filed and a subpœna served, whether the bill was filed before or after service, *lis pendens* begins from the date of the service and not from the filing of the bill.

In Sugden on Vendors, Vol. 3, p. 322, the rule is stated thus: A subpœna served is not, however, a sufficient *lis pendens* unless a bill be filed, but when a bill is filed the *lis pendens* begins from the service of the subpœna.

Freeman, in his work on Judgments, sec. 195, says: *Lis pendens*, except when some statute provides otherwise, begins from the service of the process or subpœna, and not before.

The same doctrine is announced and sustained in the following authorities: *Anon.* 1 Vern. 318; *Murray* v. *Ballou*, 1 Johns. Chancery, 576; *Hayden* v. *Bachlin*, 9 Paige Ch. 513; *Hemmington* v. *Hemmington*, 27 Mo. 560; *Allen* v. *Mandeville*, 26 Miss. 397; *Leich* v. *Wells*, 48 N. Y. 611; *Powell* v. *Wright*, 7 Beavan, 444.

Has the common law rule been changed by our statute, which declares the mode of commencing suit in chancery shall be by filing a bill of complaint with the clerk of the proper court, setting forth the nature of the complaint?

While this statute prohibits the practice which has prevailed in some places, of suing out a summons in chancery by merely filing a *prœcipe*, yet it by no means follows that the filing of a bill is to be regarded as a *lis pendens*.

The mode of commencing a suit in chancery, or taking the first step in that direction, is one thing, but the effect to be given to that act is another question.

Whilst the statute has clearly and in emphatic terms declared the manner in which a suit in chancery shall be instituted, it is silent in regard to the effect to be given to the filing of the bill on the rights of persons not parties to the suit. The result is, the common law rules that govern courts of chancery are still in force and must prevail.

The case of *Hodgen* v. *Guttery*, 58 Ill. 431, cited and relied upon by appellees, has no bearing upon this question. The point there decided was that process could not issue without filing the bill, and if process was issued or publication made without a bill being filed, the court acquired no jurisdiction over the defendant.

In the other decisions of this court, cited by appellees, the question here involved did not arise, and was not decided.

In regard to the second question, we are satisfied if a final decree had been rendered in the circuit court or this court, in the case of *Rockafellow* v. *Newcomb*, transferring the title to the premises from the latter to the former, before Grant filed his deed for record, such decree would have defeated the title of Grant. But the judgment rendered in this court, although prior to the filing of the deed for record, was not a final disposition of the case. It is true, the decision rendered settled the rights of the parties, but the decree of the circuit court was reversed, and the cause remanded, with instructions to the circuit court to render a decree that upon Rockafellow reconveying certain property to Miss Newcomb, she reconvey the property in question to him.

It needs no argument to show that the decision, while it may be regarded as settling the rights of the parties in the pending litigation, was not a final judgment, in the sense that term is used, to be a lien and binding on the property of the defendant.

We now come to the last point in the case,—whether Grant purchased in good faith and for an adequate consideration.

While it is clear, from the evidence, that at the time Miss Newcomb conveyed to Grant she was aware that Rockafellow would institute proceedings to obtain the land from her, and she no doubt sold the premises for that reason, and while her conduct in defending the action in her own name, without disclosing the fact that she had conveyed, is not commendable, yet the record is barren of evidence that establishes the fact that Grant was actuated by any improper motives in making the purchase,—that he had any knowledge that Rockafellow had any claim to the property, or that there was danger of litigation over the title.

Grant testified that he bought the property of Miss Newcomb about the 15th day of January, 1869, for $2000; that a Mr. Reid, who was a mutual friend, had called upon him

and stated she was in every way reliable, and was in need of money and desired to sell the property. He paid $300 when the bargain was made, and agreed to pay the balance when she made out a deed. On the 4th day of March, 1869, she delivered him a quitclaim deed, and he paid her the remaining $1700 in currency.

He also testified, when he received the deed, he had no knowledge that any difficulty existed between Miss Newcomb and Rockafellow, and did not know that any person had any claim on the land, and did not even know of whom or how she acquired the title to the property.

Miss Newcomb testifies the trade was made in January, 1869, and $300 paid, and the deed was executed and delivered on the 4th of the following March, when the remaining $1700 was paid.

Mrs. Graves testifies the deed was delivered in her presence at her house on the 4th day of March, 1869, and the $1700 paid.

Carpenter, the scrivener who prepared the deed, says Miss Newcomb called upon him on the 3d day of March, 1869, and left the deed made by Rockafellow to her, and directed him to make out a deed to Grant; that on the day following the deed was executed and acknowledged before him.

Here, the evidence of grantor and grantee, and the officer who prepared the deed and took the acknowledgment, and Mrs. Graves, who has no interest in the result, all concur in the fact that the sale was made and consummated at a particular date, deed delivered, and the consideration for which the land sold was actually paid.

This proof on the part of appellants is not overcome by the evidence introduced by appellees.

If it be true that the object of Miss Newcomb in making the sale to Grant was to deprive Rockafellow from obtaining a reconveyance of the property, that would not defeat the title Grant acquired if he purchased in good faith, without notice of the equities of Rockafellow. Nor can the conduct

of Miss Newcomb in defending the suit instituted by Rocka-fellow against her, in her own name, and not disclosing the fact she had sold, affect Grant, so long as he had no knowledge of the impending litigation.

It is said the fact that Grant failed to place upon the record the quitclaim deed, and the antedating the warranty deed subsequently obtained, are facts which show bad faith on his part. It is not unusual for a person to retain a deed and not record it.

As to the other matter, it was in proof, when the quitclaim deed was delivered, Miss Newcomb agreed to make a warranty deed at any time Grant might desire it, and when the warranty deed was subsequently made, it was antedated to correspond with the time the purchase was made by Grant. The date the parties might insert in the deed was of no consequence. Nothing could be gained by making a second deed, except Miss Newcomb would be responsible to Grant on the covenants in case the title should fail.

The quitclaim deed would as effectually pass the title as a warranty with full covenants. The law upon this point is well settled. *Butterfield* v. *Smith,* 11 Ill. 485; *Brady* v. *Spurck,* 27 id. 478; *Morgan* v. *Clayton,* 61 id. 35.

Various other matters of a similar character have been urged by appellees for the purpose of showing that Grant did not purchase in good faith.

But unless we can presume, without sufficient proof, that the four witnesses, Grant, Carpenter, Miss Newcomb and Mrs. Graves, have deliberately testified falsely, we are aware of nothing upon which the sale and conveyance of the property consummated on the 4th day of March, 1869, so far as Grant is concerned, can be impeached.

After a careful examination of the whole record, we are satisfied the decree can not be sustained. It will therefore be reversed and the cause remanded.

*Decree reversed.*

At the September Term, 1880, upon a re-argument of the cause, the following additional opinion was filed:

Per CURIAM:  Owing to the importance of this case, both in respect to the amount in controversy and the legal questions involved, and the further consideration that the members of the court were not in accord upon some of these questions, a re-argument was ordered, with the hope of obtaining some additional light and of arriving at a more harmonious result.  ·

There was, accordingly, a re-argument of the case at the present term of the court, in which both sides of the controverted questions upon which the case turns were presented by distinguished counsel with remarkable ability and learning.  But the court, after having availed itself of all the aid resulting from a re-argument, and after a thorough re-examination of the whole subject, has been unable to reach an altogether harmonious result, yet, a majority of the court are content with the opinion heretofore filed in the case, and believing that the views therein expressed are sound on general principles and fully sustained by the authorities, it is accordingly approved and adopted as the opinion of the court.

Mr. CHIEF JUSTICE DICKEY, dissenting:

I think the decree of the circuit court ought to be affirmed. A concise statement of the case is essential to a proper presentation of my views.

Rockafellow, being the owner in fee of the land in controversy, lying in Hyde Park, in Cook county, on the 21st of September, 1868, conveyed the same to Miss Newcomb, and on the 4th of March, 1869, she held the legal title thereto; but at that time Rockafellow had, in equity, the right to have the legal title conveyed to him by her, on his conveying to her certain lands in Iowa.  On the morning of that day, Rockafellow visited Galesburg, where she and Grant both

lived, and offered to her a conveyance of the Iowa lands, and demanded from her a conveyance to him of the land in controversy, which she refused. Soon after this, and about noon of that day, Rockafellow, by his solicitor, filed his bill in the circuit court of Cook county, asserting his equitable rights (as above stated) and asking a decree for such conveyance to him by her. A summons was at once issued, which was duly served on Miss Newcomb, at Galesburg, in Knox county, on the 7th day of March, 1869.

Soon after the demand by Rockafellow, made on the 4th of March, 1869, and about one or two hours after Rockafellow's bill was filed, Miss Newcomb delivered to Grant a deed conveying to him all her "right, title and interest" in the land in controversy, by a quitclaim deed, dated March 3, 1869, which deed was never recorded. Rockafellow's suit was duly prosecuted and was pending in the circuit court until July 14, 1870, when, on hearing, a decree was entered dismissing the bill for want of equity, and that suit was at once removed to this court by appeal taken by Rockafellow, and was pending here until in January, 1871, when, by the judgment of this court, the decree of the circuit court was reversed, and the cause remanded, with directions to the circuit court to enter a decree " that upon a conveyance by Rockafellow of the Iowa lands to appellee, she reconvey the Hyde Park property to him." See *Rockafellow* v. *Newcomb,* 57 Ill. 192.

The mandate of this court was duly filed in the circuit court on January 25, 1871, and such proceedings were therein had that on the 16th day of March, 1871, a draft for a final decree being prepared, was submitted to the circuit court for approval, and was finally approved and entered of record in that court, in strict pursuance of that mandate, on the 18th day of that month, and (Miss Newcomb having failed to convey,) a master's deed, conveying the property to Rockafellow in her behalf, was made in obedience to that decree, and filed for record in the recorder's office of Cook county, on the 25th day of April, 1871. Meanwhile, Rockafellow had no

knowledge or intimation of any conveyance by Miss New-comb to Grant, or of any claim of Grant to this property.

Soon after this, it was discovered by Rockafellow that on the 16th day of March, 1871, (two days before the entry of the final decree in the circuit court, and about an hour after the draft for the decree was presented to that court,) there was filed for record in the recorder's office of Cook county, a general warranty deed, purporting to have been executed by Miss Newcomb on the 3d day of March, 1869, duly certified to have been acknowledged by her on that day, and purporting to be a conveyance as of that date by her to Grant, of this Hyde Park land in fee simple. On examination of this warranty deed, which was still in the recorder's office, it was found to have been made upon a printed blank form, being one of a parcel of blanks bearing certain marks, the like of which had never been printed until some time in the year 1870. So it was apparent that this warranty deed was not in fact made and could not have been delivered on the day of its date, nor upon any day prior to the year 1870. It followed, necessarily, that it must have been made during the pendency of Rockafellow's suit, and that for some purpose it had been antedated, and also that the certificate of the officer, saying it was duly acknowledged before him on March 3, 1869, was untrue and false in making it appear that this warranty deed was made one day before the filing of Rocka-fellow's bill, when in truth it was made in 1870, and about a year after the *lis pendens* began.

The suit at bar was brought by Rockafellow. The bill was filed May 9, 1871, making Grant and Miss Newcomb parties defendant, asserting these facts and seeking a decree setting aside this warranty deed as a cloud upon complainant's title. Soon after, it was found that Grant had made a deed conveying the land to one Saunders (a relative or friend of Miss Newcomb's family,) and on May 18, 1871, the bill was amended making Saunders a party defendant and asking the cancellation of the deed to him.

Issues were formed, proofs taken, and the cause brought to a hearing. Meanwhile, Rockafellow had conveyed the land in question to Bennett, taking back a mortgage, and Bennett in turn had conveyed part of his interest to Sleeper and Whiton, and by supplemental bill Bennett, Sleeper and Whiton were made additional parties complainant. The circuit court, by its final decree in the case at bar, granted the relief sought, setting aside, as clouds upon the title of complainants, the deed to Grant and Grant's deed to Saunders, and the cause comes here by appeal.

It is not claimed in this court that the pretended purchase by Saunders was made *bona fide.* His rights must, therefore, stand or fall with Grant's, and need no separate discussion.

I agree that in this State *lis pendens* does not begin in a suit in chancery until the time of the service of process, and is operative only from that date, which, in the matter in question, was on the 7th of March, 1869. I can concur no farther in the views expressed in this case.

First. I believe Grant's purchase was not made in good faith.

Second. I think the law does not enable the holder of a deed from a defendant, unrecorded when the *lis pendens* begins, and of which complainant has no notice, to avoid or defeat the legal effect of *lis pendens,* by merely recording such deed before the final decree is entered of record.

Third. Even if the legal effect of *lis pendens* can lawfully be thus defeated, I do not think that the recording before final decree, of another deed—not the one in existence and held at the time when *lis pendens* begins, but made *pendente lite*—can bring about such result.

Fourth. And even if this were so, I think that the judgment of this court, rendered in January, 1871, and entered of record in this court before any deed was filed for record, was, in substance, the making of the final decree in that case, by which, through the master's deed, Rockafellow took title, and the entry thereof of record in the circuit court made

afterwards, was merely a ministerial act in carrying into effect the judgment of this court, and hence the recording done after the time of the judgment in this court had no effect other than it would have had, had the recording occurred after the decree was entered of record in the circuit court.

If I am right in any one of these four propositions, the decree of the circuit court, in the case at bar, ought to be affirmed.

As to the question of the good faith of Grant, I am not disposed to deny that Grant did, in fact, buy and pay in full for this land on the 4th of March, 1869, but I can not believe that his purchase was made in good faith and without notice of the claims of Rockafellow. The conceded facts convince me that throughout this whole transaction Grant has been prompted by, and has acted mainly, if not solely, from a desire to assist Miss Newcomb in placing this property beyond the reach of Rockafellow.

Conceding that he actually bought and paid in full for the property on the 4th of March, 1869, my credulity is not sufficiently expansive to enable me to believe that a man of his experience, business habits and wealth would, and in fact did buy, in good faith, from a lady wholly inexperienced as to titles to real estate, and untutored in the matter of values, and wholly without pecuniary responsibility, (however trustworthy and honorable he may have supposed her to be,) a parcel of land so small in quantity, lying one hundred and fifty miles from his home and the scenes of his business operations, at a price so great as $2000, and pay her in full for the same, without any knowledge of the land itself, except such as he may have acquired by a drive taken by him in a buggy alone, on a Sunday afternoon, into the neighborhood where the land was supposed to lie; and without any information as to its value, except such as he derived at the same time from casual conversation in Chicago with strangers, whose names he does not know, and who told him $2000 was a high price for the property: and that under these surround-

ings he bought and paid, without examination or information, or even inquiry of her as to the title she held, or the source from which she derived title; and also to believe that, having done this for mere speculation, he accepted a quitclaim deed, when he was entitled to a warranty, and then laid away his quitclaim deed without sending it to be recorded; and that after about a year, for no other purpose than to render his title more saleable, he got his vendor to execute to him a warranty deed for the same property, and kept that unrecorded for about a year longer, and then placed the warranty deed on record; and during all this time, though a man of business, a banker, a dealer in real estate, he never paid any taxes on the land or even inquired as to the taxes; and, further, to believe that it turned out by mere accident that though Rockafellow had demanded a deed from Miss Newcomb for this same property only a few hours before Grant paid for this property and got his quitclaim deed, and filed his bill an hour before, and though she was served with process within three days from that time, and though that suit was vigorously litigated in the circuit court, prominently discussed in the daily papers, and depositions therein were taken in Galesburg, where Grant resided, and though the first decision of the circuit court in her favor must have been a subject of rejoicing among her friends and neighbors in Galesburg, still Grant lived in happy ignorance of the suit until it had been taken to the Supreme Court and there decided against her, and until after the cause was remanded and until after the decree of the circuit court against her, and until after the making and recording of the master's deed to Rockafellow in March, 1871; and further, to believe that in all this happy ignorance Grant had been so lucky that, by mere accident, his quitclaim deed was obtained just in time to be delivered before the service of process, and, by mere accident, should be antedated one day so as to purport to convey the property just one day before Rockafellow's bill was filed, which, by many lawyers, was supposed to be the begin-

ning of *lis pendens;* and also to believe that in the making of a warranty deed afterwards, so grave a wrong should have been done as to induce a public officer to falsely certify that the same was duly acknowledged before him on March 3, 1869, (just one day before bill filed,) when, in truth, it was not made or acknowledged for more than a year after, and all this with no other motive than that this warranty deed should agree in date with the real date of the purchase; and also to. believe that Grant's luck should still attend him, so that this deed, by mere accident, should find its way to the files for record just two days before the final decree of the circuit court, and within an hour after the draft of that decree was submitted to the circuit court for approval, and in an interval of delay procured by the counsel for Miss Newcomb for the avowed purpose of examining it to see that it was all right.

These coincidences are too numerous and altogether too opportune to be the result of mere accident.

These singular circumstances lead my mind to the belief that Grant took his quitclaim deed, on March 4, 1869, in haste, that its delivery might be in advance of a suit which it was supposed Rockafellow would at once begin; that it was antedated one day for the purpose of making it certainly purport to convey before the filing of the bill; that the deed was kept from the records for the purpose of postponing the investigation of its good faith until the proofs of its *mala fides* should fade away; and afterwards, the question arising whether a deed (not purporting to convey the land, but purporting merely to convey the right and interest of the grantor therein,) was sufficient to put the property beyond the reach of *lis pendens*, I believe the warranty deed was prepared and substituted for the quitclaim deed for the sole purpose of avoiding that question, and that the antedating of the warranty deed, and the making, by the officer, of the false certificate, saying that the warranty deed was made and acknowledged on the third day of March, 1869, (when it was, in fact, done in 1870,) was procured by Grant for the mere

purpose of making it appear, falsely, that he had received that deed before Rockafellow's bill was filed; and that, under the idea that the record of the deed at any time before final decree would be sufficient, the recording of that deed was delayed until the last moment. The hasty making of a colorable sale to Saunders, by Grant, so soon after the record of this deed, is an additional pointer indicating bad faith. I think the decree ought to be affirmed upon the ground that Grant's purchase was not made in good faith.

Waiving, however, the question of Grant's good faith, and conceding the same to the fullest extent, I deny that the law enables him (as the holder of a deed from Miss Newcomb, made before *lis pendens* began, but unrecorded at that time, and of which complainant had no notice,) to avoid or defeat the legal effect of the *lis pendens* by recording such deed *pendente lite* and before the final decree is made.

I hold that when Rockafellow received the deed made by the master in chancery and placed the same on file for record, he thereby (by virtue of the law of *lis pendens*) acquired all the right and title to the property in question which he would have acquired if Miss Newcomb, on March 7, 1869, (the day of the service of process on her) had voluntarily made to him a deed conveying to him this property, and he had at that time filed the same for record in the proper recorder's office. This is the legal effect of *lis pendens*, or it is nothing. It is practically of no use if, by any subsequent acts of others claiming under Miss Newcomb's title, which, at the beginning of *lis pendens*, was subject to the order and control of the court, may be spirited away from the grasp of the court at any time before final decree.

I hold that rights and equities of all in the very same property, and derived from a party defendant in the suit, must, ultimately, rest upon the basis of the strength of their respective rights and equities when the *lis pendens* began.

By operation of *lis pendens* the master's deed to Rockafellow relates back to the time when *lis pendens* began, (March

7, 1869,) and has the same legal effect as if made and recorded at that time. By operation of our recording laws Miss Newcomb's deed to Grant, though made before the *lis pendens* began, must be treated, as against Rockafellow, as if made on the day when it was filed for record, for it was void as against him until it was filed for record. Rockafellow takes title from Miss Newcomb as of March 7, 1869, and Grant takes title from the same source as of March 16, 1871.

It is said by counsel, *lis pendens* can bind only such right and title as the defendant, Miss Newcomb, actually had in this property at the time when *lis pendens* began, and that *lis pendens* can bind no interest in this property save such as was actually vested in her at that moment.

This proposition I grant. The authorities all maintain that *lis pendens* can not operate upon that which the defendant has not at the time of the service of process. But as between these parties, Rockafellow and Grant, as against Rockafellow and his grantees the full legal title was actually in Miss Newcomb at the time she was served with process, notwithstanding Grant's unrecorded deed.

True, she had three days before that time conveyed this property to Grant; but this deed had not been recorded. As between her and Grant the title was actually in Grant; but as to all subsequent *bona fide* purchasers, without notice, that deed, by our recording laws, was inoperative and void— was no deed at all—not even a contract of purchase. As to all such purchasers it was nothing, and as to all such the title actually remained in Miss Newcomb at the time of the service of process upon her.

It can hardly be seriously questioned that Rockafellow occupies the position, in this regard, of such a purchaser. His good faith is not questioned, and it is not claimed that he had notice, actual or constructive, of Grant's purchase, until long after the *lis pendens* began. That he is a purchaser from Miss Newcomb is equally clear.

Washburn, in his work on Real Estate, vol. 3, p. 4, says: "In one thing all writers agree, * * * that there are two modes only, regarded as classes, of acquiring title to land, namely, descent and purchase."

Some writers, it is said, except from this classification estates in dower and estates in curtesy; but no writer has suggested any other exceptions. Rockafellow derives title here from Miss Newcomb, and it is plain he does not take by descent, and his estate is neither an estate in dower nor an estate in curtesy.

Littleton defines "purchase," in its largest sense, to be "the possession of lands * * * which a man hath by his own act or agreement;" and says, "in this sense, he who takes by gift, * * * or by alienation, is regarded by the law as a purchaser." Rockafellow takes by gift and alienation, through the master's deed under the decree.

Blackstone says: "Purchase, indeed, in its vulgar and confined acceptation, is applied only to such acquisitions of land as are obtained by bargain and sale, for money or other valuable consideration; but this falls far short of the legal idea of purchase."

Obviously, Rockafellow, under the master's deed, was a purchaser, even in the confined sense of the term "purchaser," mentioned by Blackstone. The master's deed is a deed of bargain and sale, and the consideration is a valuable consideration, being his former equities and his deed to Miss Newcomb of the Iowa lands. He clearly is none the less a purchaser by reason of the fact that the conveyance to him is an involuntary one, the making of which is coerced by the decree of the court, and executed in her behalf by a master in chancery. He is protected not only by the letter of the recording statutes, but he is within their true spirit. The policy of these laws is, that the real rights of all persons to land shall be of record, so that all persons dealing in real estate, or seeking to acquire it, may know by the records to whom it belongs, and to what equities it is subject, and may act

upon the faith of what appears of record. The equitable idea on which these statutes are based is, that a purchaser—who fails to inform others of his purchase by some matter of record, as against another who acts on the faith of the state of the title apparent upon the records, and on such faith changes his condition, by expending money, or incurring liability, and does not himself neglect to place his claims before the world in the public records—shall be estopped from alleging or proving that he did in fact have any title prior to the date of the record of his title. In this case, Grant, by failing to place his deed upon record, suffered Rockafellow to institute and prosecute, at great expense, his suit against Miss Newcomb, and he can not, after having so done, be permitted to say that he actually had right to this land at any time prior to the time when he made it known by filing his title paper for record. Grant also occupies the position of purchaser, but *not* as of the date of the 4th of March, 1869, when his deed was delivered. Not having recorded his deed, he can, in no view of the law as I see it, be regarded as a purchaser as of any date earlier than the 16th of March, 1871, when a conveyance to him was first recorded. In *Doyle* v. *Teas*, 4 Scam. 252, this court, in commenting upon the effect of an unrecorded deed, said: "As between grantor and grantee, the transaction is complete upon the delivery of the deed,—but between the grantee and third persons, without notice, *the purchase may be said to be incomplete* till the title paper is left for record." Again, in *Reed* v. *Kemp*, 16 Ill. 444, where neither party had notice, and there were two purchasers of the same land from the same grantor, and the second purchaser bought before the record of the first sale, but failed to record before the first sale was of record, this court held that the holder of the title first of record had the better title, laying down again the doctrine of *Doyle* v. *Teas*, *supra*, that in this State, in want of notice, a purchase of land, as to other purchasers of the same land from the same party, is not complete—is not effective as a

purchase at all—until the title paper is lodged for record; that such purchases take effect on the filing for record, and not before. Such deeds in such cases are treated as if made and delivered at the time of filing for record. The record of Rockafellow's title was made March 7, 1869, when the process in his suit was served. The record of Grant's title was made March 16, 1871, long after the record of the title of Rockafellow. According to *Reed* v. *Kemp, supra,* Rockafellow holds the better title. The notice arising by operation of law, from the filing for record of a conveyance of real estate, is merely constructive notice, artificial and arbitrary in its nature, and rests for its justification solely upon considerations of public policy. The notice arising by operation of law from the establishment of a *lis pendens,* is also merely constructive, and is artificial and arbitrary in its nature, and rests for its justification also solely upon considerations of public policy. It is not perceived that the notice in the one case can, for any reason, be regarded as of higher character than the other. They are alike in their nature, and the first in time is first in potency. Holding, under such conditions, that Grant's title is a better title than that of Rockafellow, involves, and may practically lead to, results singularly incongruous. Let us suppose, in this case, that after the *lis pendens* began by service of process upon Miss Newcomb, and before the recording of any deed to Grant, she had again sold and conveyed this same land to a stranger, and received again full payment; and that this stranger, having bought in ignorance of Rockafellow's suit, and in ignorance of Grant's unrecorded deed, had placed his deed on record promptly, and before any deed to Grant was lodged for record. It is plain that in such case the title of this stranger would have been superior to that of Grant, because the stranger's deed was filed for record first. It is equally plain, in such case, that the title of this stranger would have been inferior to that of Rockafellow, for the stranger bought and took his conveyance during the pendency of Rockafellow's suit against Miss Newcomb. It

would therefore seem impossible that Grant's title, which is inferior to that of the stranger, can at the same time be superior to that of Rockafellow, which is superior to that of the stranger. If holding Grant's title to be better than Rockafellow's necessarily leads to such results, such conclusion ought to be rejected. The law, when properly understood, leads to results more in harmony with each other.

It is an axiom in mathematics that things which are equal to the same thing are equal to each other. It is equally plain that a thing which is less than a given thing can not be greater than another thing, which other thing is greater than the same given thing. If one piece of cloth is shorter than a yard-stick, it can not be longer than another piece of cloth which is longer than the yard-stick. So I use the stranger's supposed title (in my illustration) merely as a yard-stick to measure each of the titles held, the one by Rockafellow and the other by Grant. And I find by that measurement that Rockafellow's title is certainly the better of the two.

This precise question came in judgment and was expressly decided in *Norton* v. *Birge,* 35 Conn. 250, and my attention has not been called to any other case wherein the same question has been adjudged. In that case a conveyance was delivered before suit begun, but not put on record until after the suit was instituted. It was there held that the grantee stood in relation to the pending suit just as he would have stood if the conveyance had been taken during the pendency of the suit. It is true Mr. Freeman, in his work on Judgments, sec. 201, speaks of this decision as an exception to the rule that "*lis pendens* applies only to rights and interests acquired of a party thereto *after* the institution of the suit," and intimates a doubt as to whether it can be maintained. The author is obviously in error in supposing that this decision is in anywise a departure from the rule thus declared. On the contrary, it is in full conformity with the rule. It is a mistake to assume, as this author seems to do, that this decision rests upon the idea that *lis pendens* can in any case

apply to rights or interests not resting in the party to the suit at the time of the institution of the suit, or, in other words, that *lis pendens* can apply to rights and interests acquired from such party before the institution of the suit, by a person not a party to the suit. On the contrary, the decision rests upon the idea that the rights and interests in question were in fact acquired from the party to the suit after the institution of the suit, although the deed was delivered before the suit began,—and this, because the deed, though delivered, not being recorded, was void as against complainant, and therefore, as against him, passed no interest until it was filed for record, and no interest as against the complainant was acquired until the time of such filing for record, and therefore, in so far as concerns the complainant, these rights and interest were acquired from the defendant after the institution of the suit; and by the terms and true meaning of the rule, *lis pendens* does apply to the rights and interest thus acquired.

We are referred to cases where a mortgagor filed his bill to redeem from the mortgage, making the mortgagee alone a party defendant, and wherein, by the answer of the mortgagee, it was shown that before the institution of the suit the mortgagee had transferred all his interest in the mortgage and mortgage debt to a third person by an unrecorded assignment. In such cases it was held that such assignee must be made a party defendant, and that *lis pendens* did not apply to the interest held by such assignee under an unrecorded assignment, so as to make a redemption by payment to the mortgagee effective against such assignee.

The cases are not at all at variance with the decision in *Norton* v. *Birge*. The statute rendering void a conveyance or transfer of an interest in real estate until recorded, operates in favor of such subsequent purchasers as buy without notice *the same interest* conveyed by the unrecorded conveyance. The interest claimed by the complainant in the bill to redeem is the excess in the value of the land over the amount of the

mortgage debt. The interest in the land conveyed by the assignment of the mortgage is simply a right to collect from the land the amount of the mortgage debt. Hence, at the time of filing the bill the complainant sets up no title to the thing conveyed by the unrecorded assignment. So the recording laws do not apply to the interest he claims in his bill.

Another class of cases is where a bill, by a mortgagee, is brought to foreclose his mortgage, wherein the mortgagor alone is made defendant, as the supposed owner of the equity of redemption, wherein it is held that the holder of the equity of redemption, by an unrecorded conveyance thereof, delivered by the mortgagor before suit brought, is a necessary party. This class of cases is not at all analogous to *Norton* v. *Birge* or to the case at bar. In this class of cases the complainant does not claim, in his bill, title to the same interest conveyed by the unrecorded conveyance of the equity of redemption. The complainant claims an interest in the value of the land to the extent of the amount of his mortgage debt. The interest conveyed by the unrecorded conveyance of the equity of redemption, is the excess of the value of the land over the amount of the mortgage debt. This unrecorded conveyance of the equity of redemption is, by the recording laws, void as against a subsequent purchaser without notice of the equity of redemption, who places his title on record before the first conveyance is placed on record, but is not void against a subsequent purchaser of the mortgage or against a complainant who does not claim to own the equity of redemption. Hence the unrecorded conveyance of the equity of redemption, as against the complainant in such foreclosure suit, is, at the time of the institution of the suit, valid, and has already passed the equity of redemption from the defendant mortgagor; and so *lis pendens* does not apply to that interest, for, as against complainant, the interest passed from the defendant before suit, and was not in any sense acquired from him after suit begun.

Cases are presented where the purchase from the defendant, made before suit, was conditional, and some of the conditions remained to be performed after suit instituted, and wherein such purchasers were held entitled, (notwithstanding the *lis pendens,*) to perfect their purchase after suit brought, by performing the conditions. These cases do not militate against my views. These conditional contracts were valid when the suit was begun, even against subsequent purchasers, and therefore, as against the complainant. The recording laws cut no figure in these cases. These contracts, although conditional, were valid, and were not, like the unrecorded deed, void as against complainant.

I find but one adjudicated case wherein any judge has intimated that my position is not the true law. In that case (*Haughwout* v. *Murphy,* 22 N. J. Eq. 545,) it was held that a certain unrecorded deed was not subordinated to a decree against the grantor in a suit wherein the grantee was not a party, for the plain reason that it did not appear that any service of process had ever been obtained. After deciding the case on that ground, the learned judge who delivered the opinion proceeds to say that the deed was delivered before any proceedings were had in the suit, and that by reason of the delivery of the deed, *lis pendens* would not have applied even if it had been established. No argument or authority is given in support of the thought. The recording laws are not alluded to in the opinion, and, so far as this question is concerned, it plainly was not well considered. I regard this dictum as of little importance.

Another class of cases is presented as sustaining the title of Grant, among which are *Giblen et al.* v. *Trimble,* 14 Ohio, 323, and *Jackson* v. *Roberts,* 11 Wend. 422, wherein holders in possession under unrecorded deeds were held not to be affected by the institution of a suit against their grantors, begun after the delivery to them of their deeds. This class of cases is in no manner antagonistic to my views of the case at bar, for the plain reason that possession under an unre-

corded deed has the same legal effect as to third parties as would have resulted from the recording of the deeds before the institution of the *lis pendens.*

I am, therefore, clearly of opinion that where the legal title of record to land is in a defendant, and by the bill it is shown that the complainant has an equitable right to a conveyance of the legal title from the defendant to him, and upon final hearing it is so decreed, and where such conveyance is duly made (in obedience to such decree,) and recorded in apt time, the title so obtained is superior to that of a man who, at the beginning of the suit, held an unrecorded deed to him from such defendant, (of which the complainant had no notice at that time,) and who filed his deed for record after the service of process upon the defendant, and before the final decree settling the rights of the parties to the suit. I hold that the law of *lis pendens* does apply to the holder of such a deed. And I think that on that ground alone the decree in the case at bar ought to be affirmed.

Waiving, however, this view of the subject, which I think presents the true view of the law, and conceding that the law does enable the holder of a deed from a defendant, in such case, unrecorded at the time when *lis pendens* begins, and of which complainant has no notice, to avoid or defeat the legal effect of the *lis pendens* by recording such deed at any time before the final decree in the case is made, still I deny that *the recording* in such case, before final decree, *of another and different deed* (not the one delivered before the *lis pendens* began, but one made *pendente lite,*) can produce such result.

It is said, in the ruling opinion:

"We are satisfied, if a final decree had been rendered in the circuit court or this court, in the case of *Rockafellow* v. *Newcomb*, transferring the title to the premises from the latter to the former, before Grant filed his deed for record, such decree would have defeated the title of Grant."

This assumes that Grant had a title which would have been defeated by the decree of the circuit court, had it not

been for the fact that he placed his warranty deed on record before the decree was rendered. We are not told expressly what title is here referred to, whether it was title derived through and by the warranty deed, or title derived through and by his quitclaim deed. I suppose this reference is not to title derived through the warranty deed, for it is conceded that deed was made in the year 1870, was made *pendente lite,* and all agree that a deed made by a defendant *pendente lite,* though recorded before decree, is subject and subordinate to the decree.

The only other source of title is the quitclaim deed. The meaning of this passage must be that if Grant had not placed his warranty deed upon record before final decree in the circuit court, his title, derived through and by his quitclaim deed, would have been defeated by the rendering of such final decree. This seems to assume that the record of the warranty deed had the same effect as would have been accomplished by recording the quitclaim deed itself, had it been filed for record on the 16th day of March, 1871: that is, the effect of defeating the binding power of the *lis pendens.*

It seems to me this can not be so. In the case of *St. John* v. *Conger,* 40 Ill. 535, this court decided that the recording in the proper county of an authenticated copy of a deed was not, under our general recording laws, equivalent to the recording of the deed itself, and the record of such authenticated copy was not constructive notice to a subsequent purchaser, who bought and recorded his deed after the recording of the copy of the first deed, but before the first *deed itself* was filed for record. By the language of the statute, no recording is made constructive notice or can give operative effect to a deed (as against third persons, without notice,) except the recording of "*the same.*"

The recording of some other paper than the title paper in question does not answer, under our statute, as a substitute for the record of the paper itself. Constructive notice, arising from the filing for record of a title paper, is a creature of

statute law. Nothing except that prescribed in the statute can amount to such notice. If, under the general provisions of the recording laws, as held in *St. John* v. *Conger, supra,* the recording of an exact copy of a deed is not equivalent to the recording of the deed itself, how can it be thought that the recording of another and entirely different deed (in this case the warranty deed)—which makes no reference to the unrecorded deed in question, (the quitclaim,) and which, but for its false date and its false certificate of acknowledgment, would not indicate that any deed was made before the suit was begun—can be, in legal effect, the same as would have been the recording at that time of the quitclaim deed itself. The language of the statute in this regard is: "All deeds required to be recorded shall take effect and be of force from and after the time of filing *the same* for record and not before, as to all subsequent purchasers," etc., "and all such deeds shall be *adjudged void* as to," etc., "until *the same* shall be filed for record." This is not "until the same or some other equivalent paper shall be filed," etc., but it is "until *the same* shall be filed," etc.

It seems to me plain that even if we assume that a *lis pendens* may be rendered abortive by the filing for record, at any time before final decree, by the holder thereof, of a pre-existing unrecorded deed, no such effect can be produced by the making and filing for record, *pendente lite,* of another and wholly different deed, especially when such other deed, but for the falsehoods imprinted upon it, would give no indication of a conveyance made by the defendant before *lis pendens* began. Can it be true that any deed can be of more beneficial effect, in law, to its holder by reason of a false date and a false certificate of acknowledgment, when such falsehood is proved and confessed, than the same would have been had it borne its true date and a true certificate of acknowledgment? I think not.

The plain state of the case is, that Grant's title under the *quitclaim* deed can not prevail against that of Rockafellow,

(even on the reasoning of the ruling opinion,) because that deed was not recorded *before* the final decree of the circuit court, for that deed was never recorded. And his title under his *warranty* deed can not prevail against that of Rockafellow, for that deed was confessedly made after *lis pendens* was fully established, and its record before such decree could not affect the rights of Rockafellow.

Again, and lastly, I can not concur in the idea suggested and relied upon in the decision of this case, that the binding effect of the final decree, in the case under discussion, upon the property in question, was in any way dependent upon the lien given by statute to judgments and decrees upon the property of the parties against whom such judgments and decrees are rendered.

The decree in the case of *Rockafellow* v. *Newcomb* would have bound this property just as effectually if the case had been taken to another county by change of venue, and the decree had been rendered by the circuit court of such other county. The binding effect of the decree in this regard rests upon the law of *lis pendens* and upon this alone. If this be not so, why have we discussed the question as to whether *lis pendens* began before or after the delivery of this quitclaim deed? If the binding character of the decree arises from the law of *lis pendens*, the decree is of force by reason of its settling the rights of the parties as *res judicata*. If so, the rights of the parties, as is conceded, were settled by the judgment of this court in January, 1871, and months before any deed to Grant was filed for record.

If I am in error in all other positions stated in this opinion, still the decree of the circuit court ought, in my judgment, to be affirmed upon this ground alone. If the title from Miss Newcomb was transferred to Rockafellow by any decree, it was by the judgment of this court in January, 1871, and the formalities to carry that judgment out in detail, were mere ministerial or clerical acts to be done by the circuit court

and the master in chancery. Neither the circuit court, nor the master who was to make the deed, had any judgment or discretion to be exercised in obeying the mandate of this court.

WALKER and SCHOLFIELD, J. J., also dissenting.