PHILIP NORTON *v.* HORACE BIRGE AND OTHERS.

The doctrine of *lis pendens* recognized.

Whether the doctrine will be applied to a purchaser who does not take his title, pending the suit, from a party to the suit : *Quære.*

If the doctrine be subject in its application to such a limitation, yet a purchaser whose grantor took a conveyance from a party to the suit while it was pending, stands in the same position in respect to the application of the doctrine as his grantor would have done.

Where a conveyance was executed before the suit was brought, but was not put on record till some time after the suit was brought, it was held that the grantee stood, in relation to the pending suit, just as he would have done if the conveyance had been taken during the pendency of the suit.

*A* made a conveyance to *B*, *B* to *C*, and *C* to *D*, all fraudulent, and *N*, with no actual knowledge of any infirmity in the title, took a mortgage of *C*. At the time he took the mortgage the land records showed attachments on the property by *A*'s creditors, and the law was so that such attachments might be made the basis of insolvent proceedings in the probate court, by the institution of which the attachments would be dissolved. These proceedings had, in fact, been instituted, but *N* took his mortgage with the knowledge that such attachments had been made, and had subsequently been discontinued, but with no inquiry as to whether insolvent proceedings had been instituted. When he took the mortgage a bill in equity was pending, brought by the trustee in insolvency against *B* to set aside the fraudulent conveyance to him, and the deed of *B* to *C*, though executed and delivered before the suit, was not put on record or known to the trustee till a long time after the suit was brought. Held, in applying the doctrine of *lis pendens* to the title acquired by *N*, that if he was not fully chargeable with notice of the rights of the trustee in insolvency, yet it was not a case of any hardship in the application of the doctrine.

BILL IN EQUITY for an injunction against the prosecution of an action of ejectment, and for the establishment of the petitioner's title to certain real estate, brought to the Superior Court in Hartford county. The real estate in question was the same which was the subject of suit in the case of *Birge* v. *Nock*, reported in 34 Conn. R. 156, and that action was the action of ejectment against which the injunction was sought. It was agreed on the hearing that all the facts found in that case should be considered as found in the present, except as affected by the further facts now found. The following further facts were found by the court.

After the execution of the mortgage from George F. Nock to the petitioner on the 3d of April, 1860, the petitioner the next day loaned the further sum of $1,000, taking as security therefor the joint note of Thomas G. Nock and George F. Nock, payable twelve months after date, and a second mortgage deed of the same premises, to secure the payment thereof. Afterwards, on the 10th day of April, 1861, having caused another search of the town records to be made, and finding the title to the premises upon the record the same as at the time of the first search, with the exception of the two mortgages above mentioned, the petitioner loaned the further sum of $1,200, taking as security therefor the joint note of George F. Nock and Thomas G. Nock, payable twelve months after date, and a third mortgage of the premises to secure the payment thereof. The sums of money secured by these two last mortgages were also loaned by the petitioner in good faith, and without notice, in the same manner as found by the court in the former finding in respect to the loans secured by the first mortgage. He had no actual knowledge of any infirmity in the title, and ĥo knowledge of the pendency of the suit of Chapman against Nott until a few moments before the decree therein was rendered ; and before the decree was rendered, and on the same day, he presented a petition to the court for leave to become a party to the cause that he might assert and defend his title to the premises against the trustee, but leave to enter and become a party was denied.

Afterwards, on the 18th day of August, 1863, George F. Nock executed a quit-claim deed of the premises to the petitioner, which deed was recorded the 24th day of October, 1863. No part of the notes had then been paid, and the amount then due thereon was more than the value of the mortgaged premises.

At the March term of the Superior Court, in the year 1868, judgment was rendered in favor of Birge in the action of ejectment against Thomas G. Nock, but no execution has been issued on the judgment.

Upon these facts the case was reserved for the advice of this court.

*C. Chapman* and *McFarland,* for the petitioner.

The principal question which the case presents is, whether the petitioner's rights are affected by the fact that he became a purchaser while the suit of *Chapman* v. *Nott* was pending.

1. This court has said that "it is deserving of serious reflection whether, considering our registry system and its policy, and the difference of practice prevailing here and elsewhere as to the mode of instituting chancery proceedings, it would not be necessary, at least so to modify the doctrine of *lis pendens* prevailing elsewhere that it should not bear upon the honest acquisition of a title upon which, on our records of titles, there appears to be no incumbrance, or upon those proceedings in chancery here of which it is not possible by any inquiry or diligence under our present system to obtain the slightest knowledge." *King* v. *Bill*, 28 Conn., 599. The impolicy of adopting and domesticating this doctrine, the injustice that would result from it, the impossibility under our registry and judicial systems of ever ascertaining the validity of a title to land if it were adopted, are here so forcibly stated as to render further argument against the policy of adopting it useless. When the court is untrammelled by precedent, and perfectly free to adopt or reject a novel doctrine, its practical effect and consequences, and its compatibility or incompatibility with our political and judicial systems, should certainly be very carefully considered. When the evil which this rule was adopted to remedy becomes apparent, it will be easy for the legislature to apply the remedy by providing by law, as is already done in nearly every state of the Union, for the record of a notice of *lis pendens*.

2. Since the English registry acts the English court of chancery, where this doctrine had its origin, has utterly repudiated it in respect to all conveyances duly taken and registered. Mr. Adams says: "The question which has arisen under these acts is, whether a person buying an estate with notice of a prior incumbrance not registered, shall be bound in equity by such incumbrance, although he has obtained

priority at law by registration of his deed; and it has been held that he shall, but that the notice must be clear and undoubted, amounting in effect to evidence that, knowing the situation of the prior incumbrancers, he registered in order to defraud them. *A mere lis pendens is not such notice." Adams'* *Eq.* 361; *Wyatt* v. *Barwell,* 19 Vesey, 439. Adams further says, in the same connection, that " the doctrine as to actual notice of unregistered deeds has been a subject of regret, *as breaking down the operation of the acts,* and it is perhaps difficult to reconcile it altogether to principle." Thus we see that, since the enactment in England of registry laws similar to our own, this doctrine has been discarded as inconsistent with them, and the effect that has been given even to actual notice has been deplored as impairing the efficacy due to those laws. If, in the case at bar, Chapman, or his insolvent, Prouty, had had what they did not have, an actual conveyance of the premises in question at the time this suit was brought, neither that conveyance unrecorded, nor the pendency of the suit, would have been notice to the petitioner, under the doctrine of *lis pendens* as now administered in England. But here there was no outstanding title at all of which the *lis pendens* could be notice. All the trustee claimed was a resulting equity growing out of the character of certain conveyances, and the situation of the parties to them at the time they were made, which conveyances were perfectly regular on their face and duly recorded. How, we ask, is any degree of human diligence to avail in obtaining notice of such a shadowy thing as this, of which the trustee was in pursuit? Where does it reside? Where is it to be found? Nowhere, except in the mind of the trustee. In conformity to what is now the law in England, it has been decided that the doctrine of *lis pendens* is inconsistent with the recording acts in this country. *Newman* v. *Chapman,* 2 Rand. 93, 107; *Page* v. *Street,* 1 Speer's Eq. R. 159, 212.

3. The doctrine never was applied to any case, except where the conveyance was made *pending the suit by a party to the suit. French* v. *The Loyal Co.* 5 Leigh, 627, 664;

*Scarlet* v. *Gorham*, 28 Ill., 319.   In the case at bar, the conveyance was not made by Nott pending the suit, nor was it made to the petitioner by any *party* to the suit.

4.  In this case there is another reason why this doctrine should not be allowed to close the petitioner's mouth and deprive him of his rights.   The moment he heard of the pendency of the suit he hastened to employ counsel, who at once made an application to the court to allow him to appear and assert his title; but the judge, proceeding on the expressed idea that the petitioner's rights would not be affected by the decree, refused to permit him to appear, and permitted a decree by default to be entered up.

5.  It is a fixed rule of equity to lend assistance to a *bona fide* purchaser without notice, and not to give any relief against him.   *Frost* v. *Beekman*, 1 Johns. Ch. 300; *Wallwuyn* v. *Lee*, 9 Ves. 24.   The principle is now universal, both in England and in this country, that a *bona fide* purchaser is entitled to protection, whether he purchase from a fraudulent grantee or a fraudulent grantor.   4 Kent Com. 464; 1 Story Eq. Jur., §§ 405, 434; 1 Am. Lead. Cases, 76; *Anderson* v. *Roberts*, 18 Johns., 515; *Bean* v. *Smith*, 2 Mason, 252; *Bridge* v. *Eggleston*, 14 Mass., 245; *Martin* v. *Cowles*, 1 Dev. & Batt., 29; *Somes* v. *Brewer*, 2 Pick., 184; *Thompson* v. *M'Kean*, 1 Ashm., 129; *Violett* v. *Violett*, 2 Dana, 323; *Price* v. *Junkin*, 4 Watts, 85; *Blanchard* v. *Castille*, 19 Louis., 362; *Oriental Bank* v. *Haskins*, 3 Met., 332; *Hoke* v. *Henderson*, 3 Dev. Law R., 12.   In *Anderson* v. *Roberts*, the case of *Roberts* v. *Anderson*, 3 Johns. Ch. 372, holding a different doctrine was overruled; and in that case, and those of *Bean* v. *Smith*, *Oriental Bank* v. *Haskins*, and *Hoke* v. *Henderson*, the only other case in this country holding a different doctrine, *Preston* v. *Crofut*, 1 Conn., 527, was commented on and disapproved.

6.  The law and equity of the case are both on the side of the petitioner.   He holds the legal title, and loaned his money on the faith of this specific property, after exercising all possible diligence in the investigation of the title, in all the places designated by law for that purpose.   No one whose title or whose rights this respondent represents gave any credit

or loaned any money on the faith of this property. They not only did not do that, but it is not shown that Royal Prouty ever had any title whatever to the property, or that he ever diverted a dollar of his assets from his creditors and invested it in the premises.

*Hyde*, for the respondents.

1. The deed to George F. Nock was fraudulent and void. *Birge* v. *Nock*, 34 Conn., 156. This being so he could convey no title to Norton. *Preston* v. *Crofut*, 1 Conn., 527, 541.

2. The conveyances to Norton having been made during the pendency of the suit by Chapman to set aside the fraudulent conveyance to Norton's grantor, his title must fall when the title of his grantor is set aside by a valid decree. This case is unlike the case of *King* v. *Bill*, 28 Conn., 593. In that case Bill did not claim to be the owner of the land in law or equity. He merely claimed that Mason, the legal and equitable owner, had contracted that he *would* convey to Bill, and Bill brought his petition for a specific performance of that contract. If he had obtained a title under his petition it would have dated from the decree. Until then the title was in Mason as a valid legal title, and Mason having parted with this title before the decree was passed, the court held no title passed by the decree. But in this case this court has declared that the real title to the premises vested in Chapman, upon his appointment as trustee, long prior to any claim of title by Norton; and the petition of Chapman was not to get a title from Nott, but to set aside the fraudulent conveyances that had been spread on the records in fraud of his rights. And though the doctrine of *lis pendens* may not be applicable to a case like that of *King* v. *Bill*, all the authorities agree that it is applicable to a case like the present. To deny the doctrine would open a wide door for fraud, for it renders the court powerless. The defendant Nott was a resident of New York, beyond the reach of an injunction. He conveyed to George F. Nock, then a resident of Pennsylvania, and George F. Nock to the petitioner. "The established rule is that a *lis*

*pendens* duly prosecuted and not collusive is notice to a purchaser, so as to effect and bind his interest by the decree." *Murray* v. *Ballou*, 1 Johns. Ch., 566; *Murray* v. *Lylburn*, 2 id., 444; *Harrington* v. *Slade*, 22 Barb., 166; Willard's Eq., 251; 1 Story Eq. Jur., §§ 405, 6, 7; *Meux* v. *Anthony*, 6 Eng. (Ark.) 411, 421; *Hersey* v. *Turbett*, 27 Penn. S. R., 418; *Jackson* v. *Warren*, 32 Ill., 332; *Green* v. *White*, 7 Blackf., 242; *Chaundron* v. *Magee*, 8 Ala., 570; *Gossom* v. *Donaldson*, 18 B. Monr., 231, 237; *Shotwell* v. *Lawson*, 30 Miss., 28; *Lee* v. *Salinas*, 15 Texas, 495; *Gould* v. *Stanton*, 16 Conn., 20. This doctrine has been held repeatedly in courts of law. In the case of *Jackson* v. *Andrews*, 7 Wend., 152, which was an action of ejectment, the facts were very similar to those in this case and the doctrine for which we contend was fully established. The same doctrine is established in the following cases, which were actions at law. *Diamond* v. *Lawrence County*, 37 Penn. S. R., 353, 356; *Loomis* v. *Riley*, 24 Ill., 307, 309; *Inloes' Lessee* v. *Harvey*, 11 Maryl., 519, 524; *Bennett's Lessee* v. *Williams*, 5 Ohio, 461, 463; *Jackson* v. *Stone*, 13 Johns., 447.

3. The argument that the rule we contend for would work a hardship upon Norton is entitled to but little weight in this case. The property belonged to the creditors of Prouty. Nock in his endeavor to cheat and defraud these creditors makes use of Norton. Either the creditors or Norton must be made the victims of Nock's fraud. The creditors have in no way contributed to the fraud. They, through Chapman the trustee, had taken every step the law provided to secure the property. On the other hand is not Norton chargeable with a want of vigilance? He learned from the records that the property had been attached as Prouty's. The probate records showed the assignment of Prouty and that this property was inventoried as part of his estate. The records of the Superior Court showed the pendency of Chapman's petition. Reasonable inquiry would have developed the facts, and this case seems a proper one wherein the doctrine of *caveat emptor* should apply.

CARPENTER, J.   In *Birge* v. *Nock*, 34 Conn., 156, we held that the deed to Caroline Nock, the deed from Caroline Nock to Hiram Nott, and the deed from Nott to George F. Nock, were inoperative as against the creditors of Royal Prouty. We also held that the first mortgage deed from George F. Nock to Norton, and the lease from Norton to Thomas G. Nock, were also void as to Thomas G. Nock, and that he could not avail himself of them as a defense to that action.   We also held that Birge, who derived title from the trustee, was the owner of the premises, subject to Norton's mortgage, or free from incumbrance, according as that mortgage should be declared valid or otherwise.

It now appears, from a further finding of facts, that after the execution of the first mortgage to the petitioner, he loaned the further sums of one thousand dollars and twelve hundred dollars to Thomas G. Nock, and took a second and third mortgage therefor on the property in question.   On the 18th day of August, 1863, the amount of these several mortges exceeded the whole value of the property.   On that day the petitioner took from George F. Nock a quit-claim deed of the premises.   He now brings a petition against Birge, and prays that the deed from Chapman to Birge be set aside, and declared null and void, and for an injunction against the further prosecution of the action of ejectment against Thomas G. Nock.

We have already decided that Birge, by virtue of the proceedings in court and the conveyance to him, was at least the owner of the equity of redemption.   We can not therefore declare the conveyance to him null and void, as prayed for. Although the mortgage debt exceeds the value of the property, yet we can not say that the equity of redemption is wholly worthless.   He still has the right to redeem, and we can not say that he will not choose to exercise that right.   The decree asked for is not the usual, nor do we think it is the proper, mode of extinguishing the equity of redemption.   We have no precedent for declaring the title of the mortgagor null and void at the instance of the mortgagee.

But again, it is averred in the petition that George F. Nock

executed a release deed of all his right, title and interest in the premises to the petitioner. The petitioner assumes that that deed extinguished the equity of redemption. That could not be, for, as we have just seen, the equity of redemption was not in the releasor, but in the respondent, Birge. Besides, that deed was executed more than a year after the passage of the decree vesting the title in Chapman. With full knowledge of the infirmity in Nock's title, the petitioner requests and takes a deed from him purporting to convey the equity of redemption. That deed was not taken in good faith. With full knowledge of the fraud, he deliberately takes a deed from a fraudulent grantee, and comes into a court of equity and asks that that deed may be made the basis of a decree extinguishing the rights of the creditors whose debts were sought to be avoided by the fraud. He does not come with clean hands. So far therefore as the relief sought is made to depend upon that deed, the case is without merits. The petitioner therefore is not entitled to the specific relief prayed for; and as the bill does not pray for relief generally, that is sufficient perhaps to dispose of the case.

Inasmuch, however, as the case was argued upon different grounds, and as it is competent for the petitioner, if he is entitled to any relief, to amend his bill, we will proceed to consider the main question discussed—whether the doctrine of *lis pendens* applies to this case.

It is obvious that there must be cases to which the doctrine should apply; otherwise the ends of justice might be defeated, the decrees of the court would be evaded, and the party having the strongest inducement to prolong litigation would not unfrequently find it in his power to do so to an unlimited extent. It is a rule founded upon a great public policy. "Every man is presumed to be attentive to what passes in the courts of justice in the state or sovereignty where he resides. And therefore a purchase made of property actually in litigation, *pendente lite*, for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the

suit.   Ordinarily, it is true, the decree of a court binds only the parties and their privies in representation or estate.   But he who purchases during the pendency of a suit, is held bound by the decree that may be made against the person from whom he derives title.   The litigating parties are exempted from taking any notice of the title so acquired; and such party need not be made a party to the suit."   1 Story Eq. Jur., §§ 405, 406.

A leading case on this subject in this country is *Murray* v. *Ballou*, 1 Johns. Ch., 566.   In that case Chancellor Kent says: "The established rule is, that a *lis pendens*, duly prosecuted, and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree."        *        *        "The counsel for the defendant have made loud complaints of the injustice of this rule, but the complaint was not properly addressed to me, for, if it is a well settled rule, I am bound to apply it, and it is not in my power to dispense with it.   I have no doubt the rule will sometimes operate with hardship upon a purchaser without actual notice; but this seems to be one of the cases in which private mischief must yield to general convenience; and most probably the necessity of such a hard application of the rule will not arise in one out of a thousand instances.   On the other hand we may be assured the rule would not have existed, and have been supported for centuries, if it had not been founded in great public utility."   In *Murray* v. *Lylburn*, 2 Johns. Ch., 444, the same doctrine is recognised and applied.   The court says: "There is no principle better established, nor one founded in more indispensable necessity, than that the purchase of the subject matter in controversy *pendente lite*, does not vary the rights of the parties in that suit, who are not to receive any prejudice from the alienation."   These cases have been followed, in that and other states, in a great number of cases both in law and equity. *Jackson* v. *Andrews*, 7 Wend., 152; *Harrington* v. *Slade*, 22 Barb., 166; *Hersey* v. *Turbett*, 27 Penn. S. R., 418; *Diamond* v. *Lawrence County*, 37 Penn. S. R., 353; *Loomis* v. *Riley*, 24 Ill., 307; *Jackson* v. *Warren*, 32 Ill., 332; *Green* v. *White*, 7 Blackf., 242; *Gassom* v. *Donaldson*, 18 B. Monr., 231; *Inloes'*

*Lessee* v. *Harvey*, 11 Maryl., 519; *Bennett's Lessee* v. *Williams*, 5 Ohio, 461. See also *Gould* v. *Stanton*, 16 Conn., 20.

The question of *lis pendens* came before this court in *King* v. *Bill*, 28 Conn., 593. The court held that the doctrine was not applicable to the circumstances of that case. But that case is far from being decisive of the present. The facts there differ materially from the facts now before us. In that case the deed, which, it was claimed, should be affected by the *lis pendens*, was given a few hours after the service of the petition and before it was returned to court. As it was not probable that the grantee would have obtained knowledge of the pending suit by any degree of diligence that could reasonably be required of him, the court intimated that the doctrine of *lis pendens* should not be adopted to the extent of applying it to a case like that. In this case the suit had been pending in court more than a year when the petitioner took his first mortgage.

Another point decided in that case has been urged upon our consideration. It was there decided that when a court of equity transferred the title to real estate from the respondent to the petitioner, without requiring any act of the respondent, under a statute authorizing that to be done, the decree operated only upon such title as the respondent had at the time of passing the decree. Here again that case differs from this. In that case the petitioner in the *lis pendens*, at the time he instituted his suit, had no title, legal or equitable, but brought his suit to obtain the title. It was really a bill for the specific performance of a contract for the sale of real estate. And as the respondent, in whom the whole title was, had conveyed away his title long before the passage of the decree, there was nothing for the decree to operate upon. In this case the whole title, legal and equitable, so far as creditors were concerned, was in Prouty, and vested in Chapman as trustee. As it was not competent for Chapman to avail himself of the legal title in the ordinary mode—by attachment and levy of execution—he necessarily had resort to a court of equity to remove the fraudulent record title outstanding in other par-

ties.   The real interest was in him from the beginning, and the effect of the decree was to remove a cloud from his title.

We are now prepared to examine carefully the circumstances of the case, for the purpose of seeing if there is any thing in it which makes it inequitable to hold that the petitioner is bound by the decree of the Superior Court in the case of *Chapman* v. *Nott*, or rather, for the purpose of seeing whether, upon strict equitable principles, he ought not to be bound.   At the time this property was attached by the creditors of Prouty as his property, a notice of such attachment was entered on the land records of the town.   To these attachments the attention of the petitioner was called while examining the records preparatory to making his first loan.   He had notice then that creditors claimed the property to be Prouty's, and there was nothing on the record to indicate that that claim had been abandoned.   He was therefore put upon inquiry as to the disposition of those suits.   It would have been indeed full notice to him as against the attaching creditors, had they been able legally to pursue their attachments; and we think it was enough to impose upon him the duty of making inquiry as against the representative of all the creditors.   Now suppose he had entirely failed to make such inquiry, I think we should say without hesitation that he failed to use due diligence. Here was record notice of an outstanding title in two of Prouty's creditors; proper inquiry would have disclosed the fact that that title, by operation of law, had become vested in the trustee for the benefit of all the creditors.   In that state of the case, upon well established and well known equitable principles, his title would have been postponed to that of creditors.

The record shows that he was "informed that the attachments were of no consequence, and that the writs had never been returned to the court to which they had been made returnable."   But it does not appear that he sought or obtained any other information.   From whom he obtained that information is not entirely clear, but probably from the Nocks or one of them.   Upon the strength of that information alone he seems to have been satisfied that creditors had no claim upon

the property and accordingly loaned his money. When we remember that the Nocks were the parties interested in procuring this loan, it does not seem that a man of ordinary prudence would be satisfied with the information thus obtained. The law was so that insolvency within sixty days after the attachment dissolved the lien and vested the property in trustees. It is to be presumed that he knew the law, and he probably knew it in fact, for it had been upon the statute book for several years. The fact that the attachments were apparently abandoned so soon, in connexion with the fact that property standing in the name of other parties was attached as the property of Prouty, was sufficient to excite a suspicion of insolvency at least. Under these circumstances a careful man would hardly have been satisfied with the bare information that the attachments had not been pursued, especially as definite and reliable information could have been so easily obtained. In all probability any one in the street would have informed him that Prouty's estate was in process of settlement as an insolvent estate before the court of probate; the probate records would have disclosed the fact that this very property was inventoried as a part of that estate; and the trustee would have informed him that the suit in question had been pending in the Superior Court for more than a year. With the means of information at hand, when there was so much to excite suspicion, it is apparent that the hardships, usually complained of in the application of the doctrines of *lis pendens*, do not exist in this case.

We are satisfied therefore that Norton had notice that Prouty's creditors had claimed this property as a fund for the payments of their debts; and the case fails to show that he had any sufficient reason for supposing that that claim had ever been abandoned. The petitioner failed to do all that might reasonably have been required of him, while on the other hand the trustee pursued the claim initiated by the creditors with reasonable diligence. He did all that the law required of him. It is not inequitable therefore that the loss, if any, should fall on the petitioner, rather than upon the creditors. Thus we are not compelled in this case to make a harsh ap-

plication of the doctrine of *lis pendens,* in order to give effect to the decree of the Superior Court; for there is in the case the element of negligence, enough perhaps to charge the petitioner with constructive notice. We might perhaps have rested the cause upon the latter ground alone. But be that as it may, we think substantial justice requires that the bill be dismissed.

But the counsel for the petitioner say in their brief that "the doctrine never was applied to any case, except where the conveyance was made pending the suit by a party to the suit." In support of this position they cite two cases only—*French* v. *The Loyal Company,* 5 Leigh, 627, and *Scarlett* v. *Gorham,* 28 Ill., 319. Neither of those cases goes so far in modification of the rule as to affect this case. In the former case the head note is, "A *lis pendens* can only affect a purchaser of the subject in controversy from a party to the suit." Neither the grantor nor any party under whom he claimed was a party to the pending suit, nor was the thing granted a part of the subject matter of controversy in it. In both respects the case differs from this. *Scarlett* v. *Gorham* was determined upon the ground that there was no *lis pendens.* The opinion of the court is very brief. "The title of the present owner relates back to the time when the payment became a lien upon the premises. At that time the bill had not been filed, even if the doctrine of notice by *lis pendens* were extended so as to affect those who claim under parties who were not parties to the bill."

In this case the deed from Nott to George F. Nock, although executed before the trustee instituted his suit, was not recorded until long afterwards. Nock therefore, as against the trustee, must be deemed to have taken the conveyance *pendente lite.* As the petitioner's grantor was a purchaser from a party pending the suit, the title he acquired in respect to the point now under consideration must be placed upon the same footing as his grantor's. Otherwise the purposes of the suit, and the ends of justice in all such cases, would be defeated.

We advise the Superior Court to dismiss the petitioner's bill.

In this opinion the other judges concurred.