Davis v. Jenkins.

FRANK DAVIS v. ENOCH E. JENKINS.

1. SALE OF LAND — *Fraudulent Representations — Damages.* Where a party who claims to possess a right to a timber-culture claim under the laws of the United States, and to own and control the relinquishment of the same, fraudulently misrepresents the location and quality of the land to one who, relying upon his representations, purchases and pays for his relinquishment and right, such purchaser is entitled to recover the damages actually sustained; and the fact that the purchaser in making his entry filed an affidavit in the United States land office that the land was prairie, and devoid of timber, will not defeat his recovery.

2. DAMAGES — *Land, Non-Taxable — Jury.* In the action to recover damages for the fraud practiced by the seller upon the purchaser, the non-taxable character of the land so entered is a proper consideration for the jury in determining the value of such a claim and right of entry.

3. ATTACHMENT *After Verdict.* An attachment may be allowed in a civil action for the recovery of money after the return of a verdict, and before the final judgment thereon is rendered and recorded.

*Error from Finney District Court.*

ENOCH E. JENKINS recovered a judgment against *Frank Davis* of $900, in the district court of Finney county. In his petition he alleged that the —

"Plaintiff, on or about the 8th day of October, 1886, bargained with the said defendant to buy of him a relinquishment of a certain tree claim and piece or parcel of land of the said defendant, which relinquishment he, said defendant, represented to own and control, and the land included in said claim and relinquishment thereto to be good, level, prairie sod and tillable land, and situated in Finney county, Kansas, six miles west of Ivanhoe, and suitable for timber-culture and agricultural purposes, and especially desirable and would just suit the plaintiff, who then and there expressed a desire to purchase, enter and cultivate a claim under the U. S. land laws, known as timber-culture claim.

"Plaintiff, further complaining of the defendant, says that at the time of said bargaining, said defendant well knew that each and all of his representations so made as aforesaid by said defendant were false; that the said plaintiff, then confid-

ing in the truth of said representations, and believing them to be true, and supposing that said defendant actually owned and controlled said relinquishment, and that the land included in said claim so relinquished was good, level, prairie sod and tillable land, and was situated in Finney county, Kansas, six miles west of Ivanhoe, and was suitable for agricultural and timber-culture purposes, agreed to pay for said relinquishment and claim the sum of $75, and did then pay said defendant the sum so agreed upon as aforesaid, and did use and exhaust his (said plaintiff's) rights under the timber-culture laws on said tract of land, defendant representing that he had just filed a relinquishment thereto in the U. S. land office so plaintiff could file and enter same as tree claim; whereas, in truth and in fact, the said defendant did not own nor control, and had not owned nor controlled, any such relinquishment; that the land represented to be included in the claim conveyed by said defendant as aforesaid was unappropriated public domain, and had never been entered under any of the public land laws, and was not good prairie sod and tillable land, situated in Finney county, Kansas, six miles west of Ivanhoe, but was rough, hilly, mountainous sand hills, and untillable piles of pure sand, and was situated — miles south of Hartland, in Hamilton county, Kansas, in the country known as the sand hills, and is unfit for agricultural purposes and for timber-culture purposes, and is wholly worthless; whereby the said plaintiff has sustained damages to the amount of $1,500, to wit: The sum so paid as aforesaid, to wit, $75; (2) the value of said plaintiff's rights under the timber-culture laws, to wit, $750; and (3), the difference in value between 160 acres of good, level, prairie sod and tillable land, situated as represented by said defendant (less the government price), and 160 acres of rough, hilly, mountainous sand hills, and untillable piles of pure sand, situated as the facts show it, less the government price therefor.

"Wherefore, the said plaintiff prays judgment against said defendant for the said sum of $1,500, his damages so as aforesaid sustained, for costs of suit, and for all other and further proper relief."

The defendant admitted in his answer the sale of his interest in the claim, but denied that he represented the same to be good, level, prairie sod and tillable land, situated in Finney county, six miles west of Ivanhoe, and suitable for timber-

culture and agricultural purposes, or that he made any representations whatever as to the quality of soil or purposes for which it was adapted, or where the same was located. Upon the issues framed, a trial was had before a jury, which resulted in a verdict in favor of the plaintiff. After the verdict was returned, but before judgment was given, the court, on the application of the plaintiff, granted an order of attachment, which was levied upon the real estate of the defendant. A motion was made to dissolvĕ the attachment upon various grounds, and the court sustained the motion as to the homestead of the defendant, but overruled it as to other real estate which had been levied upon. The defendant brings the case to this court for review.

*H. R. Boyd,* for plaintiff in error.

*Brown, Bierer & Cotteral,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : This case is founded on the alleged fraud and deceit practiced by Davis on Jenkins in a transaction relating to a timber-culture claim, and we fail to see why the petition does not set forth a cause of action. In substance, it avers that Davis, who claimed a right under the United States laws to a tract of land, and that he owned and controlled the relinquishment of the same, represented it to be well-located, good, level, tillable land, suitable for timber-culture and agricultural purposes, and especially adapted to the wants of Jenkins, who wished to enter a timber-culture claim under the United States land laws. He confided in the truth of the representations made by Davis, and purchased and paid him for the relinquishment and claim. He avers that the representations were false in every particular; that Davis had no right in the claim, and did not own or control the relinquishment thereto; that the tract was not located where he represented that it was; that it was not level, tillable land, and not suitable for agricultural and timber-culture purposes; but, on the contrary, was rough, hilly, mountainous sand hills,

and untillable piles of pure sand, and wholly worthless. Jenkins alleged that, by reason of the fraud and deceit practiced upon him by Davis, he had parted with his property, exhausted his rights under the timber-culture laws of the United States, and been otherwise damaged, in the total sum of $1,500.

The fact that Jenkins was required to make an affidavit when he placed his timber-culture filing on the land does not debar him from recovering the damages which he actually sustained. It is claimed that if he complied with the act of congress in making the affidavit, he must have known the character of the land, and therefore could not have relied upon the representations of Davis. In this affidavit the applicant swears that the land was prairie, or devoid of timber, but is not required to state anything in regard to the quality of the soil or the purposes for which it was adapted. (1 Supp. Rev. Stats. of U. S. 348.) Jenkins may have been acquainted with the fact that the land was prairie, and devoid of timber, without having a knowledge of the exact location, or whether it was good, tillable land, suitable for agriculture and the cultivation of timber. If he relied upon the representations, as alleged, and was thereby deceived to his injury, he may recover for the damage sustained, although he might have ascertained by a further search and inquiry that the statements made by Davis were untrue. (*McKee v. Eaton*, 22 Kas. 226; *Claggett v. Crall*, 12 id. 393.)

In instructing the jury the court stated that land entered under the timber-culture act was not taxable from the time the entry is made until final proof is made and a final certificate is received from the register of the land office, and that final proof may be made at the expiration of eight years, but it is not necessarily made until the expiration of thirteen years. It is not claimed that this is an incorrect statement of the law, but it is contended that it is inapplicable in the case. The non-taxable feature of a timber-culture claim was a proper consideration for the jury in determining the value of such a claim, and of the right to enter the same.

No error was committed by the court in granting an attachment after the return of the verdict. The statute provides that an attachment may issue "at or after the commencement" of an action. The order may therefore be granted at any time during the pendency of the action, and before the final determination of the same. In the present case, after the verdict was returned, notice of a motion for a new trial was immediately given, and the motion was duly filed within the statutory time. It is true, that after a judgment is recorded it is effectual, notwithstanding the pendency of a motion for a new trial; (*Church v. Goodin*, 22 Kas. 527;) but here the judgment was reserved until the disposition of the motion for a new trial. The plaintiff in error asks, What is to be gained by the levy of an attachment after verdict upon real estate, since the judgment when finally rendered becomes a lien upon the real estate from the first day of the term of court? A sufficient answer to the inquiry is, that no judgment was recorded; and if the court had set aside the verdict which had been returned and had granted a new trial, there would have been no lien nor any protection against the fraudulent disposition of the real estate by the plaintiff in error. The purpose of an attachment is to seize and hold the property until it can be subjected to execution; and a party is entitled to the benefit of an attachment until the entry of a judgment upon which an execution may issue. Until the judgment is finally entered an attachment may be had, and a lien of the same continues till it is merged in the judgment finally rendered and recorded. The priority obtained by the attachment continues after the entry of judgment until execution issues. (*Speelman v. Chaffee*, 5 Col. 247; *Lynch v. Crary*, 52 N. Y. 181; *Bagley v. Ward*, 37 Cal. 121; *Schieb v. Baldwin*, 22 How. Pr. 278; Drake, Attach., § 224.)

There is some contention with respect to the sufficiency of the evidence, but the record does not properly show that all of the evidence is preserved, and hence no consideration of that subject is demanded. (*Hill v. National Bank*, 42 Kas. 364.) We have read the testimony contained in the record, however,

and are inclined to the opinion that it is sufficient to sustain the verdict and judgment that were given.

Judgment affirmed.

All the Justices concurring.