[No. 1823, February 21, 1916.]

WILSON et al. v. ROBINSON et al.

### SYLLABUS BY THE COURT.

1. Where a party procures a conveyance of real estate to be made to him by means of false and fraudulent representation, of which act the original vendor has no notice, and thereafter conveys such real estate to a third party, who withholds such deed from registration and recordation until after suit is filed to cancel such conveyance to his vendor, and notice of lis pendens is filed, such purchaser, under section 4261, Code 1915, is a purchaser pendente lite. P. 428

2. Misrepresentations as to the location of real estate, whether made innocently or with fraudulent intent, entitle a person acquiring the land, relying upon the statements, to rescind the transaction and recover the amount paid by him on the purchase price. P. 431

3. A willful misrepresentation by a vendor, affirming that the rental value of a property sought to be exchanged or sold was greater than in truth it was, where the truth in regard

to such representation was unknown to the purchaser, and where, under the circumstances, he was justified in relying upon such representation, constitutes actionable fraud.

P. 431

Appeal from District Court, Roosevelt County; G. A. Richardson, Judge.

Action by J. A. Wilson and others against J. Robinson and another. From a judgment for plaintiffs, defendants appeal. Affirmed.

JAMES A. HALL of Portales, for appellants.

Relationship between parties to a transaction does not of itself create prima facie presumption of fraud in transaction.

Shealy v. Edwards, 75 Ala. 411; Duffield v. Delancey, 36 Ill. 258; Norfolk City Nat. Bank v. Bridgers, 114 N. C. 383; Lane v. Starr, 1 S. D. 107; Gottlieb v. Thatcher, 151 U. S. 271, 38 L. Ed. 157.

As to who is a bona fide purchaser from fraudulent grantee, see 20 Cyc. 648, 650.

In absence of actual notice, subsequent purchaser is not chargeable with notice of fraud, where deed and possession give no indication of it.

Peck v. Dyer, 147 Ill. 592; Fox v. Peck, 45 Ill. App. 239; Leach v. Ansbacher, 55 Pa. St. 85; Hart v. Bates, 17 S. C. 35.

There must have been actual notice of the fraud in this case.

Stearns v. Gage, 79 N. Y. 102; Parker v. Conner, 93 N. Y. 124; Lyons v. Leahy, 15 Or. 8, 13 Pac. Rep. 643; Coolidge v. Heneky, 11 Or. 327, 8 Pac. Rep. 281.

If Wilson's agent's report was untrue, it cannot be used against the defendants.

Slaughter, Amd., v. Gerson, 80 U. S. 627.

GEORGE L. REESE of Portales, for appellees.

As to essentials of defense of being a bona fide purchaser see:

39 Cyc. 1778-1779; Johnson v. Georgia Loan & Trust Co. et al., 141 Fed. 593, 72 C. C. A. 639; Boone v. Chiles, 10 Pet. 177, 211, 9 L. Ed. 388.

The burden of proof rests upon one claiming to be a bona fide purchaser.

Weber v. Rothchild, 15 Or. 385, 3 A. S. R. 162; Neal v. Crawford, 144 U. S. 585, 36 L. Ed. 552; Russell v. Davis, 133 Ala. 647, 91 Am. St. Rep. 56; 16 Cyc. 1064.

Defense of innocent purchaser could not prevail in view of notice of lis pendens which was filed and recorded prior to filing of Carpenter's deed.

Sec. 4261, Code 1915; 25 Cyc. 1480.

Status of parties, together with their intelligence, skill or capacity, is always material where fraud in the inducement is alleged.

City of Tacoma v. Tacoma L. & W. Co., 50 Pac. 58, 4 R. C. L. 495.

Where findings are supported by substantial evidence, judgment will not be disturbed by appellate court.

Anderson v. Reed, 148 Pac. (N. M.) 502.

## OPINION OF THE COURT.

ROBERTS, C. J.—Appellee, in September, 1913, was the owner of 320 acres of land in Roosevelt county, this state. He saw an advertisement in some newspaper, inserted by one S. D. Harlow, of Kansas City, Kan., in which the latter stated that he was agent for certain property in Kansas City which he was authorized to trade for farm property. Appellee wrote Harlow, saying that he would like to trade his Roosevelt county farm for Kansas

City property.   After some correspondence, Harlow wrote appellee a letter, a part of which was as follows:

"We have succeeded in finding another party that will trade with you.   He has a large 10-room house, modern, three lots, central location, close to school and churches, paved streets, brick walks, fruit and good porches. shade trees.   Nice large bathroom and convenient.   In addition it has two good cisterns, all necessary outbuildings, such as barn, chicken house, buggy shed, etc.   The former owner is still living in the house, and he says it will rent for about $60 a month.   This would make a splendid place for a rooming house or boarding house combined.   It is centrally located, two blocks from two good car lines.   Price $8,500, mortgage $3,450, at 7 per cent.   As we understand, the mortgage can run ad infinitum as long as the interest is kept paid.   Now, if you prefer this beautiful place to the other place, I will take it up immediately.   You can live in part of the house, and rent some of the rooms for more than enough to support your family."

Appellee answered the above letter, and stated that, if the title to the 10-room house referred to in Harlow's letter was good, he would exchange his farm for the equity in the Kansas City property, provided the $3,450 mortgage was all there was against the place.   On September 26, 1913, Harlow answered Wilson's letter, and requested him to make a deed to the Roosevelt county land and to send it to Kansas City, Kan., so that the exchange of deeds might be made.   A short while after Wilson had received the letter of acceptance from Harlow, a neighbor of Wilson, Mr. Longsine, who also was on a deal to exchange property for Kansas City property through the agency of the said Harlow, started to Kansas City, Kan., to close up his deal.   Appellee, Wilson, happened to see Longsine at Benson post office, in Roosevelt county, and as Mr. Longsine was going to Kansas City, anyway, Wilson requested him to look at the house which Harlow had described to him when he got to Kansas City.   Longsine went to Kansas City, Kan., and returned to New Mejico in a few days, and reported to Wilson that the house was a big house, but he did not see the inside of it, as it was locked up.   The report of Longsine to Wilson, however, was made after Wilson's proposition to exchange had been accepted

by Harlow; but the deed from Wilson to Robinson was not made until after Longsine had returned.

After deeds had been exchanged, Wilson removed to the property in Kansas City, Kan., on the 22d day of November, 1913. Wilson testified that he found, upon examining the property, that the house was not modern, that it had no heating plant or electric lights, and that the house was very much out of repair in various ways; that the house was not centrally located; that the house was some mile and a half north of the courthouse, and the courthouse was something more than a mile, or perhaps two miles, north of the center of the city. Appellee found that the house would not rent for $60, as had been represented, and that about $20 per month was its reasonable rental value; that the house was not suitable for a rooming or boarding house, as it was too far from the business part of the city; that he also made an investigation as to the mortgage within three or four days after he reached Kansas City; that he inquired of Harlow where the notes were, stating that he wanted to pay the interest on them, and that he went to the bank and saw Mr. Brokaw, cashier of the Commercial National Bank, and advised him that he wanted to pay the interest on the notes; that Mr. Brokaw told appellee that he could not accept the interest, that there was a peculiar situation concerning the notes and mortgage, and that they would have to close it up; that appellee offered Brokaw the interest, but he declined it; that Wilson returned to Harlow's office, after Brokaw had refused to accept the interest on the mortgage, and told Harlow that the bank would not accept the interest; that appellee made inquiry of Harlow for J. Robinson at the time, but that Harlow did not disclose the whereabouts of Robinson, but said he was out of the city; that appellee made various efforts and inquiries to find the whereabouts of Robinson, but could find no trace of him. Mr. Young, who had deeded the Kansas City property to J. Robinson, stated to Wilson that he had never seen Robinson, and did not know where he was, and did not know there was such a man.

Appellee testified that Harlow held him back from making an investigation of the property, and that he did not learn the real value of the property until a newspaper correspondent boarding with him referred him to a reliable real estate firm, who told him what the property was worth; that he learned from this real estate firm that the equity in the property was of no value, that it would not pay off the mortgage; that, up until the time the appellee learned the real value of the property, Harlow had assured him that he would take care of it, and that everything would be all right. As soon as appellees learned the real condition of the property, they tendered back to appellants a deed to the said Kansas City property, and demanded that Harlow procure a deed back to them of the Roosevelt county property which they had deeded to Robinson. Harlow declined to do this, and this suit for cancellation followed.

The first complaint herein named only J. Robinson as defendant. After the complaint was filed, a deed was filed for record in Roosevelt county, by which J. Robinson purported to convey the real estate to M. C. Carpenter. Thereafter an amended complaint was filed, which joined Carpenter as a party defendant, and sought cancellation of the deed from Robinson to Carpenter, as well as the deed from appellee to Robinson. Both defendants appeared by attorney, but neither testified in the case. All the material evidence offered on behalf of the defendant was the testimony of Harlow, the agent through whom the trade was made. In fact, from the evidence in the record, it is reasonably apparent that no such person as J. Robinson ever owned the Kansas City real estate, and that the name was assumed by Harlow for the purpose of aiding him in carrying out his fraudulent scheme. Carpenter was the son-in-law of Harlow, and Harlow testified that Carpenter paid Robinson, as a consideration for the Roosevelt county land, in the following manner: That he surrendered to Robinson a note of $1,000 which he held against Robinson, and that he also turned over to him some Colorado mining stock. Whether either the note or the mining stock had any value is not disclosed by the evidence. The trial

court found, among other facts, that Harlow misrepresented the Kansas City property in various particulars,— among others, as to its rental value, its location, that it was modern, as represented, and that the holder of the mortgage would not permit it to run indefinitely, so long as the interest was paid. He also found that Carpenter was not an innocent purchaser for value, and that appellee had tendered back to Robinson the consideration which he received, and, upon such findings, entered a decree cancelling the deeds in question, from which appellants prosecute this appeal.

[1] The first question to be considered is the alleged error on the part of the trial court in finding that Carpenter was not an innocent purchaser, for value, and without notice, of the Roosevelt county land. The court was probably amply justified by the evidence in making this finding, without reference to the right of appellant Carpenter to assert and prove that he was an innocent purchaser for value, in view of the fact that his deed, although alleged to have been executed some time in November, 1913, was not filed for record with the county clerk of Roosevelt county until some time in April, long after this suit had been instituted and notice of lis pendens had been filed. There was sufficient evidence to establish the fact that J. Robinson was a fictitious person, and, this being true, Carpenter could not well have paid value for the land, for his father-in-law, Harlow, testified that Carpenter surrendered to Robinson a promissory note which he held against Robinson for $1,000 and turned over to him some mining stock. Now, if no such person as J. Robinson existed, Carpenter must, under the evidence, have known such facts, and thus knew and became a party to the scheme to defraud.

But the case can be affirmed on other grounds; hence the facts, so far as Carpenter is concerned, do not require further discussion. Section 4261, Code 1915, provides for the filing of a lis pendens notice, and states that:

"Any person whose conveyance or incumbrance is subsequently executed, or subsequently registered shall be considered a subsequent purchaser or incumbrancer, and shall

be bound by all the proceedings, taken after the filing of such notice, to the same extent as if he was made a party to the said action."

Section 4786, Code 1915, provides for the recordation of all instruments affecting real estate in the office of the county clerk of the county in which the real estate affected thereby is situate. By section 4791, id., it is provided:

"None of said writings shall be valid, except to the parties interested and those who have actual notice of the same, until it shall be deposited in the office of the clerk to be registered."

It is not claimed that the appellee had actual notice of this deed; hence this phase of the question need not be considered. Carpenter's deed was not deposited in the office of the clerk of Roosevelt county to be registered until long after the lis pendens notice was filed; hence, under the plain language of the statute, he is to be considered a subsequent purchaser, and necessarily is charged with notice of the fact that his grantor's title was attacked in this action; hence he must stand or fall with his grantor. In 21 Am. & Eng. Ency. of Law, p. 652, it is said:

"Under those recording acts which declare conveyances invalid against all persons except the parties thereto and persons having notice thereof, unless recorded, and not merely against subsequent bona fide purchasers or incumbrancers, one who takes but does not record a conveyance prior to the lis pendens is a pendente lite purchaser."

Under the terms of our statute the appellant Carpenter falls squarely within this rule; hence was a pendente lite purchaser, and is chargeable with notice. In the case of Collingwood v. Brown, 106 N. C. 362, 10 S. E. 868, the court, in construing a statute almost identical with our section 4261, quoted supra, said:

"We do not deem it necessary, however, to enter into an elaborate discussion of the various decisions upon the question, but will content ourselves with quoting the language of Mr. Bennett (section 302), whose conclusion, we think, is more in harmony with the spirit of our registry laws as construed by this court. He says that until the deed is recorded,

'It is as though no conveyance were made. By the registry laws, it only becomes effective by filing for record or registration. If, at the time it is so filed for record, there is a pending suit, the holder of such a deed previously withheld from the record is a pendente lite purchaser. He stands upon no better ground than he would have occupied if his deed were executed at the moment of its recording. The question is whether, at the time the law determines lis pendens commences, it had become effective upon the property involved. If the recording laws make the deed void as to such claimant before record, the lis pendens had become effective upon the property. This is the substance of the ruling in both the cases of Norton v. Birge, 35 Conn. 250, and Hoyt v. Jones, 31 Wis. 397, and the reasoning of those courts, as well as that of Justice Dickey, in Grant v. Bennett, 96 Ill. 513, seems to me unanswerable.' "

To the same effect, construing similar statutes, see Norton v. Birge, 35 Conn. 250; Ayrault v. Murphy, 54 N. Y. 203; Smith v. Hodsdon, 78 Me. 180, 3 Atl. 276; Myers v. Jones, 61 Kan. 191, 59 Pac. 275; Smith v. Woster, 59 Kan. 640, 54 Pac. 676, 68 Am. St. Rep. 385.

Carpenter being a pendente lite purchaser, he acquired no better title than his vendor had; hence we are required to pass upon the question as to whether the evidence warranted the finding by the court that Harlow, agent of the supposed J. Robinson, by fraudulent representation of material facts, induced appellee to exchange his farm for the Kansas City property. Two considerations justified this finding, and, while there were probably other material false representations, they need not be considered. These were: First, that the house was centrally located; and, second, that it had a rental value of $60 per month. In considering these representations, it must be remembered that appellee resided perhaps 1,000 miles distant from the property; that he was unacquainted with Kansas City, and knew nothing personally as to either the location or rental value of the property. It is true that, after he had agreed to exchange properties with Harlow, he asked a friend who was going to Kansas City on other business to look at this property; but his friend did not know as to whether the property was centrally located, or as to its rental value. Upon these facts it is clear that he relied solely upon the representations made by Harlow.

[2] In a case note to the case of Ballard v. Lyons, 38 L. R. A. (N. S.) 301, the author of the note says:

"Misrepresentations, as to the location of real estate, whether made innocently or with a fraudulent intent, entitle a person acquiring the land, relying upon the statements, to rescind the transaction and recover the amount paid by him on the purchase price."

This text is supported by numerous cases from many states; hence it would appear that upon this one phase of the case alone the court was justified in making the finding of which appellant complains. But there is still another material representation, which likewise was false, upon which appellee was justified in relying, viz., as to the rental value of the property. The evidence clearly shows that the maximum rental value of the property was not to exceed $20 per month, and that such fact was known to Harlow at the time he represented otherwise to appellee.

[3] A willful misrepresentation by a vendor, affirming that the rental value of property sought to be exchanged or sold was greater than in truth it was, where the truth in regard to such representation was unknown to the purchaser, and where, under the circumstances, he was justified in relying upon such representation, constitutes actionable fraud. Hecht v. Metzler, 14 Utah, 408, 48 Pac. 37, 60 Am. St. Rep. 906. In the case of Speed v. Hollingsworth, 54 Kan. 436, 38 Pac. 496, the court said:

"The trend of the decisions of the courts of this and other states is towards the just doctrine that where a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense to an action for rescission, or for damages arising out of the deceit, that the party to whom the representations were made might, with due diligence, have discovered their falsity, and that he made no searching inquiry into facts. 'It matters not,' it has well been declared, 'that a person misled may be said in some loose sense to have been negligent. * * * For it is not just that a man who has deceived another should be permitted to say to him, "You ought not to have believed or trusted me," or "You were yourself guilty of negligence."' Big. Fraud, 523, 528, 534; Kerr, Fraud & M. 80, 81; Stevens v. Matthewson, supra [45 Kan. 594, 26 Pac. 38]; Davis v. Jen-

kins, supra [46 Kan. 19, 26 Pac. 459]; Wickham v. Grant, 28 Kan. 517; Pomeroy v. Benton, 57 Mo. 531; Wannell v. Kem, 57 Mo. 478; Redgrave v. Hurd, 20 Ch. Div. 1; Gas & Coke Co. v. Gas & Electric Co. [4 N. D. 219] 59 N. W. 1066 [37 L. R. A. 593], and cases cited; Simar v. Canaday, 53 N. Y. 306 [13 Am. Rep. 523]; Schumaker v. Mather, 133 N. Y. 590 [30 N. E. 755]; Redding v. Wright [49 Minn. 322], 51 N. W. 1056; (1892) Ledbetter v. Davis, 121 Ind. 119 [22 N. E. 744]; Gordon v. Parmelee, 2 Allen (Mass.) 212; Mooney v. Miller, 102 Mass. 217; Furnace Co. v. Moffatt, 147 Mass. 403 [18 N. E. 168, 9 Am. St. Rep. 727]; Erickson v. Fisher [51 Minn. 300], 53 N. W. 638; Campbell v. Frankem, 65 Ind. 591."

Appellant argues, at some length, alleged error on the part of the court in excluding proffered evidence as to the value of the Roosevelt county farm, but under the pleadings this question was not at issue in the case. Hence no error was committed in excluding the evidence.

Finding no error in the record, and the judgment being clearly right under the facts in evidence, the judgment will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.

